**MARION COUNTY AUDITOR, and McCord Investments, LLC, Appellants–Petitioners,**

v.

**SAWMILL CREEK, LLC a/k/a Saw Creek Investments, LLC, Appellee–Respondent.**

No. 49A02–0912–CV–1192.

Court of Appeals of Indiana.

Dec. 3, 2010.

Rehearing Denied Jan. 28, 2011.

Nicole R. Kelsey, Office of Corporation Counsel, Indianapolis, IN, for Appellant Marion County Auditor.

Brian H. Babb, Bose McKinney & Evans LLP, Indianapolis, IN, Attorney for Appellant McCord Investments, LLC.

R.C. Richmond, III, Taft Stettinius & Hollister LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

The Marion County Auditor ("the Auditor") and McCord Investments LLC ("McCord") appeal from the order of the Marion Circuit Court granting a motion filed by Sawmill Creek LLC ("Sawmill Creek"), to set aside a tax deed the Auditor issued to McCord. On appeal, the Auditor and McCord claim that the trial court erred in concluding that the tax deed should be set aside because the attempts to provide notice of the tax sale were constitutionally inadequate.

We affirm.

### Facts and Procedural History[1]

■ Sawmill Creek is a Wyoming limited liability company owned by Bill Simpson ("Simpson"), who also owns Cripple Creek Investments, LLC ("Cripple Creek"). Simpson acquired several properties in Indiana and North Carolina, the titles to which were held in the name of Sawmill Creek, Cripple Creek, or a trust Simpson had established. At issue in the present case is a four-acre tract of property located at 8355 Rockville Road in Indianapolis ("the Lot"). Simpson purchased the Lot in October 2001 for a purchase price of $450,000. At the closing of the sale of the Lot, the documentation, including the deed to the property, identified the purchaser as "Saw Creek Investments, LLC," instead of "Sawmill Creek, LLC." The closing documents were drafted by an agent of the seller, and Simpson somehow failed to notice the mistake.

At the time of the purchase, Simpson also operated a business known as Impact

---

1. We note that the Statement of Facts in the Appellants' Brief contains several argumentative statements. *See* Appellants' Br. at 10–13. This is inappropriate. *See Harness v. Schmitt,* 924 N.E.2d 162, 169 (Ind.Ct.App.2010) (stating that arguments included in statement of facts were inappropriate as part of an appellate brief); *see also* Ind. Appellate Rule 46(A)(6) (requiring the statement of facts to be in narrative form and stated in accordance with the appropriate standard of review).

Racing LLC, which was at that time located in a hangar at the Eagle Creek Airport, with an address of 4101 Dandy Trail, Indianapolis, Indiana. In September 2002, Impact Racing began to move its offices from the hangar at the Dandy Trail address to a building located at 1650 Northfield Drive in Brownsburg, Indiana. On September 5, 2002, before the move was complete, Simpson sent a letter to the Marion County Clerk stating that the new address for Impact Racing, Cripple Creek, and Sawmill Creek was the Northfield Drive address in Brownsburg. However, in this letter, Sawmill Creek was misidentified yet again, this time as "Sawmill Creek Investments, LLC" instead of just "Sawmill Creek, LLC."

After the move to Brownsburg, the property tax bills for the other properties owned by Simpson were sent to the Northfield Drive address. But because the Lot had been erroneously titled to "Saw Creek Investments, LLC" instead of "Sawmill Creek, LLC," the Auditor continued to send the property tax bills for the Lot to the now-empty hangar on Dandy Trail in Indianapolis. The employee of Simpson who was responsible for paying real estate taxes on Simpson's properties paid the tax bills she received, but did not check to make sure that the tax bills for all of the properties had actually been received. Thus, the taxes on the Lot became delinquent. By June 2003, Simpson had placed a "For Sale" sign on the Lot which included a telephone number to contact Simpson.

Because of the delinquent taxes, which totaled less than $1,000, the Lot was placed on the list of properties to be sold at the October 2005 tax sale. On August 23, 2005, the Auditor sent a pre-sale notice of the scheduled tax sale to the Dandy Trail address in Indianapolis. Pursuant to the version of Indiana Code section 6–1.1–24–4 in effect at that time, the notice was sent by certified mail only. Because this address was by this time an empty hangar, the notice was returned to the Auditor on September 16, 2005, marked as "Not Deliverable as Addressed, Unable to Forward." Appellant's App. p. 264. The Auditor did not attempt to resend the notice, but instead posted a list of properties to be sold at the October tax sale outside the Marion County Clerk's office and published notice in the newspaper.

At the October 7, 2005 tax sale, the Lot was sold to McCord for $20,000, and McCord received a tax certificate indicating that it would be entitled to a tax deed to the Lot if the property was not redeemed within the one-year redemption period. After the tax sale, a title search of the property was conducted by Valley Title Services Co. ("Valley Title"), a company that had a contract with Marion County at that time to perform title searches after tax sales. Valley Title searched the Indiana Secretary of State's website and the yellow pages for "Saw Creek Investments, LLC" and found nothing, but it did not tell the Auditor that it had not found Saw Creek Investments in its search. The title report did list Cloverleaf Properties ("Cloverleaf") as the prior owners who had sold the Lot to "Saw Creek." The report also listed two addresses for Cloverleaf, one of which was the address of the Lot.

The post-sale notice of the right to redeem the Lot was sent on July 5, 2006, by certified mail to the Dandy Trail address in Indianapolis, and again was returned as unclaimed on August 2, 2006. The Auditor took no further action to notify "Saw Creek" of its right to redeem. The Auditor did send a post-sale notice to Cloverleaf, via certified mail to a business address, but this was returned as unclaimed. The Auditor also sent notice to Cloverleaf via regular mail, but addressed to the unimproved Lot.

On December 11, 2006, after the one-year redemption period expired on October 7, 2006, the Auditor filed in Marion Circuit Court a petition for issuance of a tax deed to McCord. Notice of this filing was again sent to the Dandy Trail address in Indianapolis, and was again returned as unclaimed on January 9, 2007. The trial court entered an order on January 10, 2007, granting the petition for issuance of a tax deed, and a tax deed was issued to McCord that day.

McCord then listed the Lot for sale with a real estate agency, who placed its own "For Sale" signs on the property, including in front of the "For Sale" sign previously placed on the property by Simpson. Thereafter, Simpson was told by an acquaintance that the Lot was being sold. After calling his real estate agent to investigate, Simpson discovered that the Lot had been sold at the tax sale.

On August 27, 2007, Sawmill Creek filed a motion to set aside the tax deed, along with a praecipe for hearing and a *lis pendens* notice. On October 19, 2007, McCord filed its objection to Sawmill Creek's motion to set aside, and filed its own motion to strike Sawmill Creek's motion. On October 22, 2007, the Auditor and the Marion County Treasurer filed an objection to Sawmill Creek's motion to set aside the tax deed. The trial court eventually held an evidentiary hearing on the matter on October 19, 2009. At the conclusion of the hearing, the trial court ruled in favor of Sawmill Creek. On November 4, 2009, the trial court issued findings of fact and conclusions of law ordering that the tax deed be set aside. Specifically, the court concluded that the Auditor could have taken the additional steps of posting notice on the Lot or calling the telephone number listed on the "For Sale" sign on the Lot,

and that by not taking any additional steps, the Auditor had not sufficiently attempted to provide notice to the owner of the Lot. McCord filed a notice of appeal on December 4, 2009.

### Standard of Review

On Sawmill Creek's motion, the trial court entered specific findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. As such, our standard of review is two-tiered:

> [W]e determine whether the evidence supports the trial court's findings, and we determine whether the findings support the judgment. We will not disturb the trial court's findings or judgment unless they are clearly erroneous. Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions which rely upon those findings. In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom.

*Infinity Products, Inc. v. Quandt,* 810 N.E.2d 1028, 1031 (Ind.2004) (citations omitted). But even if the trial court has made special findings pursuant to a party's request under Trial Rule 52(A), we may affirm the trial court's judgment on any legal theory supported by the findings. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998).

### I. Preliminary Matters

Before addressing the parties' main arguments regarding the constitutional adequacy of the Auditor's notice attempts, we address a few preliminary issues.[2]

---

2. The parties also argue over whether the trial court properly relied on its own previous de-

### A. Trial Court's Findings and Conclusions

■ First, the Auditor and McCord claim that after the trial court ruled in favor of Sawmill Creek at the October 19, 2009 hearing, the court asked Simpson to file proposed findings and conclusions and ultimately adopted these findings and conclusions "almost verbatim." Appellants' Br. at 16. Sawmill Creek notes that neither the Auditor nor McCord requested leave to file proposed findings or otherwise objected to the trial court's request that Sawmill Creek submit proposed findings. The failure to so object results in waiver of the issue on appeal. *See Francies v. Francies,* 759 N.E.2d 1106, 1113 (Ind.Ct. App.2001). Moreover, both appellees had the opportunity to respond to Sawmill Creek's proposed findings, and McCord did in fact respond to Sawmill Creek's proposed findings. The trial court not only incorporated part of McCord's response in the court's findings and conclusions but made other, albeit mostly minor, changes to the proposed findings submitted by Sawmill Creek.

■ Because of the press of court business, it is not uncommon for trial courts to adopt a party's submitted findings verbatim. While this practice may cause courts on appeal to wonder whether the findings are the result of considered judgment by the trial court, this practice does not constitute error, in and of itself. *Hardebeck v. Hardebeck,* 917 N.E.2d 694, 698 (Ind.Ct. App.2009); *Prowell v. State,* 741 N.E.2d 704, 708 (Ind.2001). The critical inquiry remains whether such findings, as adopted by the court, are clearly erroneous. *Prowell,* 741 N.E.2d at 709.

### B. Sawmill Creek's Ability to Bring Suit

■ The Auditor and McCord argue that the trial court erred in setting aside the tax deed because Sawmill Creek had been administratively dissolved by the State of Wyoming in 2004 for failure to pay annual fees and was not reorganized until 2008. They claim that the relevant Wyoming statute "clearly prohibited Sawmill Creek LLC from 'carry[ing] on any business except that necessary to wind up and liquidate its business and affairs ... and notify claimants.'" Appellants' Br. at 37–38 (quoting Wyo. Stat. Ann. § 17–16–1421(c)). In response, Sawmill Creek notes that the Wyoming statute says in full that:

> A corporation administratively dissolved under W.S. 17–16–1420 continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under W.S. 17–16–1405....

Wyo. Stat. Ann. § 17–16–1421(c). Wyoming Statute section 17–16–1405 in turn sets forth what an administratively dissolved corporation may do to wind up and liquidate its business and affairs:

> A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:
>
> (i) *Collecting its assets;*
>
> (ii) Disposing of its properties that will not be distributed in kind to its shareholders;
>
> (iii) Discharging or making provision for discharging its liabilities;

cision in another case under the doctrine of *stare decisis.* We think this is essentially irrelevant on appeal, because even if the trial court did improperly rely upon its own previous decision, that decision would be in no way binding upon this court.

(iv) Distributing its remaining property among its shareholders according to their interests; and

(v) *Doing every other act necessary to wind up and liquidate its business and affairs.*

Wyo. Stat. Ann. § 17–16–1405(a). Sawmill Creek argues, and we agree, that filing the motion to set aside the tax deed would qualify as collecting assets.

### C. Sawmill Creek's Property Interest

In their reply brief, the Auditor and McCord argue that the Auditor was not obligated to notify Sawmill Creek of the tax sale of the Lot because, they contend, Sawmill Creek did not actually own the property. Instead, they claim that the deed titled the Lot to the non-existent Saw Creek Investments. Therefore, they argue that the Auditor was under no duty to notify a corporation who did not have any interest in the Lot.

We first note that the Auditor and McCord did not present this argument in their Appellants' Brief. They did argue that the Auditor could not have given notice to a "fictional, ghostlike entity" and that Sawmill Creek did not have the capability to file the motion to set aside the tax deed because it had been administratively dissolved, but they did not specifically argue that Sawmill Creek had no property interest in the Lot. It is well established that a party may not raise an argument for the first time in a reply brief. *Felsher v. Univ. of Evansville,* 755 N.E.2d 589, 593 n. 6 (Ind.2001) (citing Ind. Appellate Rule 46(A)(8), (C)). Because the Auditor and McCord did not present this argument in their Appellants' Brief, it is waived. · *See id.*

Waiver notwithstanding, it is true that, in general, a deed naming a non-existent grantee is a nullity and passes no legal title to anyone. *Le Roy v. Wood,* 113 Ind.App. 397, 47 N.E.2d 604, 605 (1943). "This rule does not apply, however, to a person in existence who is described by a fictitious or assumed name, and if a living or legal person is intended as the grantee and identifiable, the deed is valid however he may be named in the deed." *Id.* (citing 16 Am.Jur. § 78, p. 483). We are of the opinion that even though the deed to the Lot listed the grantee as "Saw Creek Investments," the legal person intended as the grantee is identifiable, and the deed is valid. *See id.; see also Am. Land Holdings of Ind., LLC v. Jobe,* 655 F.Supp.2d 882, 888–89 (S.D.Ind.2009), *aff'd,* 604 F.3d 451 (7th Cir.2010) (holding that reference to "Pan Con Coal Co" in severance deed referred to the Pan handle Consolidated Coal Company, which did exist and was the intended grantee).

### II. Constitutional Adequacy of Notice

Returning to the main issue before us, the Auditor and McCord argue that the trial court erred in concluding that the attempts to notify Sawmill Creek of the tax sale were constitutionally inadequate, and that the trial court therefore erred when it set aside the tax deed issued to McCord. In addressing this argument, we look to the tax sale statutes applicable at the time of the tax sale,[3] the United States Supreme Court's subsequent decision in *Jones v. Flowers,* 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), Indiana's statutory response to *Jones,* and the application of *Jones* to the present case.

---

**3.** We refer to the versions of the tax sale statutes in effect at the time of the tax sale of the Lot. As explained below, Indiana's tax sale statutes were amended in 2006, after the tax sale of the Lot.

### A. *Indiana's Statutory Tax Sale Scheme*

■ We look first to the applicable tax sale statutes. If an owner of real estate fails to pay the property taxes, the property can be sold to satisfy the tax obligation. *Schaefer v. Kumar,* 804 N.E.2d 184, 191 (Ind.Ct.App.2004). But the controlling statutes require that three notices be sent to the property owner. *Id.* The first required notice is the notice of tax sale set forth in Indiana Code section 6–1.1–24–4(a), which at the time relevant to the case before us provided that, prior to a tax sale, the county auditor must send notice of the tax sale "by certified mail to the owner or owners of the real property at their last known address." The second required notice is the notice of the right to redemption. As set forth in Indiana Code section 6–1.1–25–4.5(a)(3), a purchaser is entitled to a tax deed to the property at issue only if the purchaser "gives notice of the sale, the date of expiration of the period of redemption, and the date on or after which a petition for the tax deed will be filed to the owner and any person with a substantial property interest of public record in the tract or real property." At the time relevant to this appeal, Indiana Code section 6–1.1–25–4.5(b) provided that this notice was to be sent by certified mail to the parties with a substantial property interest of record "at their last known address." However, "if the address of the owner or person with a substantial property interest of public record upon diligent inquiry cannot be located ... notice may be given by publication ... once each week for three (3) consecutive weeks." *Id.*

The third notice that must be given is the notice of the petition for tax deed. Indiana Code section 6–1.1–25–4.6(a) provides that if the property is not redeemed from the tax sale, notice of the filing of the petition for the tax deed "and the date on

or after which the petitioner intends to make application for an order on the petition shall be given to the owner and any person with a substantial interest of public record in the tract or real property" just as in subsection 4.5, "except that only one (1) publication is required."

Here, pursuant to the versions of the tax sale statutes in effect at the time, the Auditor sent notice to "Saw Creek" via certified mail at the old Dandy Trail address in Indianapolis instead of the Brownsburg address. And when those letters were returned as unclaimed, the Auditor published notice in a newspaper. Under the existing precedent prior to 2006, it would appear that the Auditor here did all that was required. *See, e.g., Elizondo v. Read,* 588 N.E.2d 501 (Ind. 1992) (where property owners had moved and not updated their address with county auditor, and tax sale notices sent via certified mail to old address were returned as unclaimed, the court held that "[a]ll that is required is that the auditor send notice to the owner's last known address, that is, the last address of the owner of the specific property in question of which the auditor has knowledge from records maintained in its office."). In fact, it appears to be undisputed that the Auditor complied with the applicable versions of the relevant statutes. The question is whether due process under the U.S. Constitution required more.

### B. *Jones v. Flowers*

In 2006, the United States Supreme Court issued its opinion in *Jones v. Flowers,* holding that when the government attempts to notify a property owner of a pending tax sale via certified mail, and the certified mail is subsequently returned as unclaimed, the government "must take additional reasonable steps to attempt to provide notice to the property owner before

selling his property, if it is practicable to do so." 547 U.S. 220, 225, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).[4] The Court reaffirmed that actual notice is not required—only notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). In this regard, the Court held that simply publishing notice was insufficient. *Id.* at 237, 126 S.Ct. 1708 ("notice by publication is adequate only where 'it is not reasonably possible or practicable to give more adequate warning.' ").

Although the Court recognized that it was not its responsibility to prescribe the form of service that the government should adopt, it did conclude that there were several "additional reasonable steps" the State of Arkansas could have taken in the case. *Id.* at 234, 126 S.Ct. 1708. Among these steps was the simple act of resending the notice. *Id.* at 230, 126 S.Ct. 1708 ("[W]hen a letter is returned by the post office, the sender will ordinarily attempt to resend it, if it is practicable to do so."). And the State could even send the notice via regular mail, so that a signature was not required. *Id.* at 234, 126 S.Ct. 1708. In fact, the Court noted that "the use of certified mail might make actual notice less likely in some cases [because] the [certified] letter cannot be left like

regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time." *Id.* at 235, 126 S.Ct. 1708.

Another reasonable step that could have been taken by the State, directed at the possibility that Jones had moved as well as that he had simply not retrieved the certified letter, "would have been to post notice on the front door, or to address otherwise undeliverable mail to 'occupant.' " *Id.* at 235, 126 S.Ct. 1708. "Occupants who might disregard a certified mail slip not addressed to them are less likely to ignore posted notice, and a letter addressed to them (even as 'occupant') might be opened and read." *Id.* The Court noted that "[p]osting notice on real property is 'a singularly effective way of ensuring that a person ... is actually apprised of proceedings against him.' " *Id.* at 236, 126 S.Ct. 1708 (quoting *Greene v. Lindsey*, 456 U.S. 444, 452–53, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982)).

The Court was not wholly sympathetic to Jones, however, and rejected his argument that the Commissioner should have searched for his new address in a phone book or other government records such as income tax rolls because the unclaimed certified letter did not necessarily mean that Jones no longer lived at the home but merely informed the government that no one appeared to sign for the mail. The Court noted:

> *Elizondo* held that "[a]ll that is required is that the auditor send notice to the owner's last known address, that is, the last address of the owner of the specific property in question of which the auditor has knowledge from records maintained in the office." 588 N.E.2d at 504. Clearly, *Jones* requires more than this. This is why Westlaw's KeyCite service lists *Elizondo* with a "red flag" indicating that *Elizondo* has been abrogated by *Jones*.

---

**4.** The Auditor and McCord claim that *Jones* listed *Elizondo, supra,* as an example of a state court holding that due process requires the government to do more after it learns that its attempts at notice have failed. Appellant's Br. at 25. To the contrary, after listing the cases which had required the government to do more, the court included *Elizondo* as part of a "But see" string cite, indicating that *Elizondo* was a case that held that the government was *not* required to do more. Indeed,

Jones should have been more diligent with respect to his property, no question. People must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.

*Id.* at 234, 126 S.Ct. 1708 (citations omitted). Ultimately, the Court reversed the grant of summary judgment and remanded for further proceedings.

### C. *Indiana's Response*

■ In 2007, our General Assembly amended the pre-tax sale notice statute, in obvious response to the Supreme Court's holding in *Jones.* As amended, the statute now requires that a duplicate copy of the pre-sale notice be sent by first class mail if the initial attempt at notice by certified mail is returned and not signed:

In addition [to notice being sent via certified mail], the county auditor *shall* mail a duplicate notice to the owner of record, as described in subdivisions (1) and (2), by first class mail to the owners from whom the certified mail return receipt was not signed and returned. Additionally, the county auditor may determine that mailing a first class notice to or serving a notice on the property is a reasonable step to notify the owner, if the address of the owner is not the same address as the physical location of the

property. If both notices are returned due to incorrect or insufficient addresses, the county auditor shall research the county auditor records to determine a more complete or accurate address. If a more complete or accurate address is · found, the county auditor shall resend the notices to the address that is found in accordance with this section.

Ind.Code § 6–1.1–24–4 (2007). Thus, the General Assembly has codified the *Jones* requirement that notice be resent via first class mail if the notice sent via certified mail is returned as unclaimed, and made posting notice an optional, but not required, additional step.[5]

### D. *The Present Case*

■ The trial court here concluded that the Auditor had not taken additional reasonable steps to notify Sawmill Creek after the letters sent by certified mail were returned as unclaimed. Under the holding in *Jones*, we must agree.[6] Here, the Auditor was aware that the owner of the Lot had not received any of the three required notices, all of which were sent via certified mail and all of which were returned as unclaimed. Under these circumstances, *Jones* required the Auditor to take additional steps to attempt to provide notice to the property owner before selling his property, if it was practicable to do so. 547 U.S. at 225, 126 S.Ct. 1708.

First and foremost among these steps would have been to resend the notice via

---

5. Of course, the amended statute does not apply to the tax sale at issue here, which occurred before the effective date of the amendment. We refer to the amended statutes only for context and to show our legislature's reaction to the holding in *Jones.*

6. The Auditor and McCord also claim that *Jones* is distinguishable from the present case because, they claim the Commissioner in *Jones* sent only one notice via certified mail,

whereas here, the Auditor sent three notices via certified mail. But the Commissioner in *Jones* actually sent notice to the property address *twice*, not once. *See Jones*, 547 U.S. at 223–24, 126 S.Ct. 1708. In addition, although the Auditor sent three notices, all three notices were returned as unclaimed, making the Auditor aware that none of the three notices were effective. *See id.* at 237, 126 S.Ct. 1708.

first class mail. *See id.* at 234, 126 S.Ct. 1708. The Auditor does not explain why this simple step would have not been practicable under the circumstances. To be sure, first class mail sent to the old Dandy Trail address in Indianapolis would not, in all likelihood, have reached Sawmill Creek because that address was apparently an empty hangar. But the Auditor was not aware of this at the time the notice letters sent via certified mail were returned as unclaimed. All that was known at the time was that the owner of the Lot had *not* received the mailed notices.

■ Moreover, even if it is unlikely that first class mail sent to the old address would have reached Sawmill Creek, the failure of notice in a specific case does not establish the inadequacy of the attempted notice. *Jones,* 547 U.S. at 231, 126 S.Ct. 1708. "The constitutionality of a particular procedure for notice is assessed *ex ante* rather than *post hoc." Id.* Thus, the question is not what would have been the best way to ensure that Sawmill Creek did, in fact, receive notice. The question is instead what additional reasonable steps the Auditor could have taken that were reasonably calculated under the circumstances to apprise interested parties of the pendency of the action after the initial attempts at notice were returned as unclaimed. *See id.* at 225, 126 S.Ct. 1708.

While the trial court and the parties seem to have focused their argument on the issue of whether the Auditor should have posted notice on the Lot, we need not consider other, possible, alternative measures the Auditor could taken beyond resending the notice by first class mail. Under *Jones,* we simply cannot agree with the Auditor and McCord that resending notice by first class mail was not required here. The Auditor's attempts to notify were therefore constitutionally inadequate.

We recognize that this entire controversy could have been avoided had Simpson shown even a modicum of responsibility himself. He could have made certain that the Lot was deeded to Sawmill Creek instead of "Saw Creek." Had he properly ensured that his current address for the taxation of the Lot was on file with the Auditor, and if he had simply noticed that he had not been paying the taxes due on the Lot, all of the current controversy could have been avoided. The Court in *Jones* considered similar arguments by the Commissioner but still concluded that the Commissioner was required to do more than publish notice when notice by certified mail had been returned as unclaimed. *Id.* at 232, 126 S.Ct. 1708.

### Conclusion

We are constrained by the holding of the U.S. Supreme Court in *Jones* to agree with the trial court that the owner of the Lot at issue before us was not provided constitutionally adequate notice of the tax sale. Therefore, the trial court did not err in setting aside the tax deed issued to McCord.

Affirmed.

BAKER, C.J., and NAJAM, J., concur.