ATTORNEY FOR APPELLANT
MARION COUNTY AUDITOR
Nicole R. Kelsey
Office of Corporation Counsel
Indianapolis, Indiana

ATTORNEY FOR APPELLANT
MCCORD INVESTMENTS, LLC
Brian H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
R.C. Richmond, III
Taft Stettinius & Hollister LLP
Indianapolis, Indiana



FILED

Mar 21 2012, 11:50 am

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 49S02-1106-CV-364

MARION COUNTY AUDITOR, AND
MCCORD INVESTMENTS, LLC,                                  *Appellants-Petitioners,*

v.

SAWMILL CREEK, LLC A/K/A SAW CREEK INVESTMENTS, LLC,
                                                         *Appellee-Respondent.*

Appeal from the Marion Circuit Court, No. 49C01-0509-MI-036054
The Honorable Louis F. Rosenberg, Judge

On Transfer from the Indiana Court of Appeals, No. 49A02-0912-CV-1192

**March 21, 2012**

**Dickson, Justice.**

This appeal challenges a judgment setting aside a tax deed. The deed had been issued to McCord Investments, LLC, upon the petition of the Marion County Auditor following the one-year redemption period after a tax sale. But, in response to a motion to set aside the tax deed filed on behalf of Sawmill Creek, LLC, the trial court conducted an evidentiary hearing, ulti-

mately setting aside the tax deed on grounds that the Auditor's effort to notify Sawmill Creek of the tax sale was constitutionally deficient for failing to meet the requirements of due process. We granted transfer and now reverse the trial court.

Sawmill Creek, LLC ("Sawmill"), is a Wyoming entity managed by E.J. "Bill" Simpson. In late 2001, Simpson, on behalf of Sawmill, purchased a four acre tract of unimproved land on Rockville Road in Marion County ("the Property"). There was, however, a miscommunication during the negotiations which resulted in the closing statement, the general warranty deed, and the title insurance policy naming the purchaser as "Saw Creek Investments, L.L.C." ("Saw Creek"), instead of the proper name "Sawmill Creek, LLC."[1] Tr. at 18, 20, 40; Sawmill's Exs. 6, 7, 8. None of the documents related to the Property referenced Sawmill, and Simpson did not notice the error. The Property was recorded under the name Saw Creek. At that time, Simpson operated his companies, including Sawmill, from an address on Dandy Trail in Indianapolis ("Dandy Trail address"). The addresses thus connected to the Property were its physical location on Rockville Road and the Dandy Trail address.

In late 2002 through early 2003, Simpson moved his operations from the Dandy Trail address to Northfield Drive in Brownsburg ("Northfield Drive address"). At that time, Simpson sent a letter to the Marion County Clerk providing notice of the address change. That letter referenced Sawmill and Cripple Creek Investments, LLC, but not Saw Creek. Consequently, the mailing address for the Rockville Road property was not updated, and tax bills continued to be sent to the Dandy Trail address. Sawmill did not notice that it was not receiving the tax bills for the Property, and the taxes became delinquent. In the summer of 2005, the Marion County Auditor ("the Auditor") set the Property for tax sale.

The Auditor sent the pre-sale notice, as required by the statute in effect at the time,[2] via

---

[1] The mix-up apparently resulted from the fact that Simpson began the negotiations to purchase the Property under the auspices of another entity which he runs, Cripple Creek Investments, LLC, but then decided to conclude the transaction through Sawmill. Tr. at 14–16.

[2] Under the statutes in effect at the time, the Auditor was required to provide notice via certified mail to the owner of record before seeking judgment to set any property for sale ("pre-sale notice"). Ind. Code § 6-1.1-24-4 (2006). Additionally, the Auditor was required to provide notice of the sale and of the one year period in which the owner could redeem the property ("post-sale notice"). *Id.* §§ 6-1.1-25-4, -

2

certified mail to the Dandy Trail address.[3]  The notice was returned, stamped "NOT DELIVER-ABLE AS ADDRESSED, UNABLE TO FORWARD."  Tr. at 75–76; Sawmill's Ex. 17.  Additionally, the Auditor published the list of properties set for sale in the newspaper, on the Auditor's website, and on a list posted outside of the Marion County Clerk's office.  The Property was sold at tax sale in October 2005 to McCord Investments, LLC ("McCord"), and the one year statutory redemption period began at that time.  The Auditor then employed a title company to research the Property.  This search included not only the chain of title and potential lien-holders but also an attempt to locate Saw Creek through the records of the Indiana Secretary of State and the phonebook.  The title company was unable to locate Saw Creek because that entity did not exist.  Nor did the search reveal Sawmill as the true owner.  The title company did, however, locate two addresses for the previous owner, Cloverleaf Properties ("Cloverleaf"), one on Professional Circle and the other on Rockville Road (the location of the Property).  Following the title search, the Auditor sent a post-sale notice[4] via certified mail to Saw Creek at the Dandy Trail address.  The notice was again returned, stamped "NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD."  Tr. at 84; Sawmill's Ex. 20.  The Auditor also sent notice to Cloverleaf at the addresses located in the title search: to the Professional Circle address via certified mail and to the Rockville Road address via first class mail.  The certified letter to Cloverleaf was returned, stamped "NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD."  Tr. at 84; Sawmill's Ex. 20.  The first class letter was not returned.  At the close of the redemption period, the Auditor sent notice of McCord's request for issuance of a tax deed.  The notice was sent to Saw Creek via certified mail at the Dandy Trail address and was again returned, stamped "NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD."  Tr. at 87; Sawmill's Ex. 22.  The Auditor also again sent notice to Cloverleaf via certified mail at the Professional Circle address, that letter was also returned, stamped "ATTEMPTED NOT KNOWN."  Tr. at 87; Sawmill's Ex. 22.  The tax deed was issued to McCord.  McCord then listed the Property with a realtor who placed approximately fifteen "For Sale" signs on the Property.  One of the realtor's signs was placed directly in front of a large "For Sale" sign that Simpson erected on the Property

---

4.5. And, finally, the Auditor was required to provide notice to the owner of record when the purchaser, after the expiration of the redemption period, filed for issuance of a tax deed to the property ("notice of issuance of tax deed").  *Id.* § 6-1.1-25-4.6.

[3] The Auditor testified that no notice was mailed to the physical location of the Property because the tax records indicated it was "unimproved bare ground."  Tr. at 93.

[4] *See supra* note 2.

in 2003. An acquaintance of Simpson noticed the new signs and inquired about the Property, resulting in Simpson's discovery that the Property had been sold at tax sale.

Simpson, through Sawmill, filed a motion to set aside the tax deed. The trial court granted Sawmill's motion, concluding in relevant part,

> that the notices of the tax sale of the Property and of Sawmill's right to redeem that were issued by the Auditor in connection with the October 2005 tax sale were constitutionally deficient, so that the issuance of the Tax Deed to McCord violated due process. As in [Jones v. Flowers, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006)], there were additional reasonable steps that the Auditor practicably could have taken to attempt to provide notice to Sawmill before selling the Property. In particular, the Auditor could have posted a notice on the Property, which the United States Supreme Court noted in Flowers is a "singularly appropriate and effective way of ensuring that a person . . . is actually apprised of proceedings against him," and/or the Auditor could have telephoned the number listed on the "For Sale" sign that was posted on the property.
>
> Although the Auditor also advertised the tax sale in the newspapers, as noted by the Court in Flowers: merely publishing notice in the newspaper, when additional steps could have been reasonably taken, is constitutionally inadequate since "'[c]hance alone' brings a person's attention to 'an advertisement in small type inserted in the back pages of a newspaper.'" For the same reason, the posting of the Property within the list of the properties to be sold at tax sale on the Auditor's website and on a bulletin board outside the Clerk's office was also constitutionally inadequate under the specific facts of this case.

Findings of Fact, Conclusions of Law, and Judgment, Appellants' App'x at 21–22. (footnotes omitted) (citations omitted). McCord and the Auditor appealed, and the Court of Appeals affirmed the trial court. Marion Cnty. Auditor v. Sawmill Creek, LLC, 938 N.E.2d 778 (Ind. Ct. App. 2010). We granted transfer and now reverse the trial court.

The trial court entered special findings and conclusions according to Indiana Trial Rule 52(A). In such cases our standard of review is two-tiered. Stonger v. Sorrell, 776 N.E.2d 353, 358 (Ind. 2002). We first determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* Courts of appeal "shall not set aside the findings or judgment unless clearly erroneous." Ind. Trial Rule 52(A). "In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of the witnesses." Stonger, 776 N.E.2d at 358. The evidence is viewed in the light most favorable to the judgment, and we will defer to the trial court's factual findings if they are supported by the evidence and any legitimate inferences therefrom. *Id.*; Best v. Best, 941 N.E.2d 499, 502 (Ind.

4

2011). Conversely, legal conclusions are reviewed *de novo*. <u>Nichols v. Minnick</u>, 885 N.E.2d 1, 3 (Ind. 2008). "A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Id.* (quoting <u>Yanoff v. Muncy</u>, 688 N.E.2d 1259, 1262 (Ind. 1997)).

When an owner of real estate fails to pay property taxes, the property may be subject to sale in settlement of the delinquent taxes. Ind. Code §§ 6-1.1-24-1 to 14. This action by the state conflicts with the rights of the property owner, thus "[b]efore a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" <u>Flowers</u>, 547 U.S. at 223, 126 S. Ct. at 1712, 164 L. Ed. 2d at 423 (quoting <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313, 70 S. Ct. 652, 656–57, 94 L. Ed. 865, 873 (1950)). The parties do not dispute that the Auditor complied with the notice statute in effect at that time.[5] Rather, Sawmill contends that the Auditor's effort to provide notice of the pending sale of its property violated the constitutional due process requirement articulated by the U.S. Supreme Court in <u>Jones v. Flowers</u>.

In <u>Flowers</u>, the State of Arkansas sought to recover the unpaid property taxes on a house owned by Gary Jones. *Id.* at 223–24, 126 S. Ct. at 1712–13, 164 L. Ed. 2d at 424. Jones was sent notice by certified mail to the address of the house. *Id.* Jones, however, was not living in the house, having separated from his wife (who still resided there). *Id.* The certified letter was returned, stamped "unclaimed." *Id.* The notice was later published in the newspaper. *Id.* When a bid was submitted for the purchase of the home, the notice was again sent to the house via certified mail addressed to Jones. *Id.* The notice was again returned, stamped "unclaimed." *Id.* This was the extent of the effort to notify Jones of the delinquent taxes and pending sale. *See id.* The house was sold, the redemption period expired, and the purchaser, Linda Flowers, "had an unlawful detainer notice delivered to the property." *Id.* This notice was apparently executed by personal service on Jones' daughter who then conveyed the news to Jones. *Id.* Jones brought suit alleging a violation of due process. *Id.*

---

[5] *See supra* note 2. After the U.S. Supreme Court issued its decision in <u>Flowers</u>, the Indiana General Assembly amended the statute adding follow-up requirements when the initial attempt at notice is returned. *See* P.L. 89-2007, sec. 2, 2007 Ind. Acts 1367.

The Court ruled in favor of Jones, holding that, "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225, 126 S. Ct. at 1713, 164 L. Ed. 2d at 425. The Court stated that "[i]n response to the returned form suggesting that Jones had not received notice that he was about to lose his property, the State did— nothing." *Id.* at 234, 126 S. Ct. at 1718, 164 L. Ed. 2d at 430–31. This, the Court opined, violated due process because "there were several reasonable steps the State could have taken." *Id.* Given that the "notice required will vary with circumstances and conditions," *id.* at 227, 126 S. Ct. at 1714, 164 L. Ed. 2d at 426 (quoting Walker v. City of Hutchinson, 352 U.S. 112, 115, 77 S. Ct. 200, 202, 1 L. Ed. 2d 178, 182 (1956)) (internal quotation marks omitted), the Court proposed that, in Jones' case, notice could have been resent by "regular mail, so that a signature was not required," resent addressed to "'occupant,'" or posted on the front door of the house. *Id.* at 234–35, 126 S. Ct. at 1718–19, 164 L. Ed. 2d at 431. Posting in the newspaper, the Court stated, "is adequate only where 'it is not reasonably possible or practicable to give more adequate warning.'" *Id.* at 237, 126 S. Ct. at 1720, 164 L. Ed. 2d at 433 (quoting Mullane, 339 U.S. at 317, 70 S. Ct. at 658, 94 L. Ed. at 875). However, "[a]n open-ended search for a new address" in the phonebook and other government records would exceed the requirements of due process in this case. *Id.* at 235–36, 126 S. Ct. at 1719, 164 L. Ed. 2d at 431–32. "We do not believe the government was required to go this far." *Id.*

The Court relied on Mullane for the standard: "when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 229, 238, 126 S. Ct. at 1715, 1721, 164 L. Ed. 2d at 427, 433 (alteration in original) (quoting Mullane, 339 U.S. at 315, 70 S. Ct. at 658, 94 L. Ed. at 874) (internal quotation marks omitted). Under this imperative, the Court concluded "that someone who actually wanted to alert Jones that he was in danger of losing his house would do more when the attempted notice letter was returned unclaimed, and there was more that reasonably could be done." *Id.* at 238, 126 S. Ct. at 1721, 164 L. Ed. 2d at 433. But that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." *Id.* at 234, 126 S. Ct. at 1718, 164 L. Ed. 2d at 431. The Court thus reiterated that "[i]t is not our responsibility to prescribe the form of service that the [government] should adopt." *Id.* at 234, 238, 126 S. Ct.

at 1718, 1721, 164 L. Ed. 2d at 430, 433 (alteration in original) (quoting Greene v. Lindsey, 456 U.S. 444, 455 n.9, 102 S. Ct. 1874, 1880 n.9, 72 L. Ed. 2d 249, 258 n.9 (1982)) (internal quotation marks omitted). Rather, "[i]t suffices for present purposes that we are confident that additional reasonable steps were available," *id.* at 238, 126 S. Ct. at 1721, 164 L. Ed. 2d at 433, and "the State did—nothing," *id.* at 234, 126 S. Ct. at 1718, 164 L. Ed. 2d at 430.

The Court's decision in Flowers was based upon the analytical framework provided by Mullane and reinforced by Dusenbery v. United States, 534 U.S. 161, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002). Flowers, 547 U.S. at 223, 226, 229, 238, 126 S. Ct. at 1712, 1713–14, 1715, 1720–21, 164 L. Ed. 2d at 423, 425, 427, 433; *see also* Dusenbery, 534 U.S. at 167, 122 S. Ct. at 699, 151 L. Ed. 2d at 605 ("We think Mullane supplies the appropriate analytical framework."). In fact, the Court specifically "disclaim[ed] any new rule that is contrary to Dusenbery and a significant departure from Mullane." Flowers, 547 U.S. at 238, 126 S. Ct. at 1720–21, 164 L. Ed. 2d at 433 (internal quotation marks omitted) (responding to the dissenting opinion of Justice Thomas). The Court's decision in Flowers thus informs the rule provided by Mullane but does not alter it. Due process, therefore, "requires balancing the 'interest of the State' against 'the individual interest sought to be protected by the Fourteenth Amendment.'" *Id.* at 229, 126 S. Ct. at 1715, 164 L. Ed. 2d at 427 (quoting Mullane, 339 U.S. at 314, 70 S. Ct. at 657, 94 L. Ed. at 873). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314, 70 S. Ct. at 657, 94 L. Ed. at 873. "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315, 70 S. Ct. at 657, 94 L. Ed. at 874; *see* Dusenbery, 534 U.S. at 168, 122 S. Ct. at 700, 151 L. Ed. 2d at 605 (explaining the holding of Mullane). But "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." Flowers, 547 U.S. at 225, 126 S. Ct. at 1713, 164 L. Ed. 2d at 425.

In the present case, regarding the Auditor's attempt to notify Sawmill (Saw Creek), the trial court found, in sum: (1) that three certified letters were mailed to the Dandy Trail Address each of which were returned; (2) that a title search was conducted on the Property and neither the

7

Indiana Secretary of State nor "any business listing" revealed Saw Creek; and (3) that notice was published "in the newspaper, on the Auditor's website and on a bulletin board outside the Clerk's office." Findings of Fact, Conclusions of Law, and Judgment, Appellants' App'x at 18–19. Based upon this, the trial court concluded "that the notices of the tax sale of the Property and of Sawmill's right to redeem . . . were constitutionally deficient, so that the issuance of the Tax Deed to McCord violated due process" because "there were additional reasonable steps that the Auditor practicably could have taken to attempt to provide notice to Sawmill before selling the Property." *Id.* at 21. We disagree.

As observed above, the attempt to provide notice must be "reasonably calculated, under *all* the circumstances" in order to be constitutionally sufficient. Mullane, 339 U.S. at 314, 70 S. Ct. at 657, 94 L. Ed. at 873. (emphasis added). Consequently, the review of whether notice efforts satisfied this standard is a fact-intensive process that requires consideration of every relevant fact. *See* Flowers, 547 U.S. at 227, 126 S. Ct. at 1714, 164 L. Ed. 2d at 426 (quoting Walker, 352 U.S. at 115, 77 S. Ct. at 202, 1 L. Ed. 2d at 182) ("[W]e have explained that the 'notice required will vary with circumstances and conditions.'"); Dusenbery, 534 U.S. at 168–69, 122 S. Ct. at 700, 151 L. Ed. 2d at 605–06 (asking whether the notice was "reasonably calculated under all the circumstances" and then reciting the steps taken by the government in an effort to provide notice (internal quotation marks omitted)); Mullane, 339 U.S. at 314–15, 70 S. Ct. at 657, 94 L. Ed. at 873 ("But if with due regard for the practicalities and peculiarities of the case these [notice] conditions are reasonably met, the constitutional requirements are satisfied."); *see also* Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 803, 103 S. Ct. 2706, 2714, 77 L. Ed. 2d 180, 190 (O'Connor, J., dissenting) (discussing the Mullane standard as requiring consideration of the "totality of circumstances"). Thus, every fact relevant to whether the Auditor acted or failed to act "as one desirous of actually informing" Sawmill of the pending tax sale must be considered.

Applying these considerations, we note that the trial court characterized the notices sent to Sawmill as returned "unclaimed," Findings of Fact, Conclusions of Law, and Judgment, Appellants' App'x at 18–19, when they were returned "NOT DELIVERABLE AS ADDRESSED,

8

UNABLE TO FORWARD."[6]  Tr. at 75–76, 84, 87; Sawmill's Exs. 17, 20, 22.  Additionally, the trial court omitted other relevant facts established by the evidence: (1) that, as a result of the record search, the Auditor sent three notices to the previous owner of record, Cloverleaf, in addition to those sent to Sawmill; (2) that, when attempting to provide notice, the Auditor was aware that the Property was unimproved, bare land; and (3) that as many as 1,800 tax sale notices were returned to the Auditor in 2005.  As explained below, these omissions are material to the analysis.

Under the "practicalities and peculiarities of the case," Mullane, 339 U.S. at 314, 70 S. Ct. at 657, 94 L. Ed. at 873, we think the Auditor satisfied the due process requirement articulated in Mullane, Dusenbery, and Flowers.  When the Auditor mailed the pre-sale notice of tax delinquency and pending tax sale to Sawmill at the address that Sawmill had provided, it was returned, stamped "NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD." Sawmill Creek's Ex. 17.  The new information thus presented to the Auditor made re-mailing the notice by first class mail unreasonable.  See Flowers, 547 U.S. at 234, 126 S. Ct. at 1718, 164 L. Ed. 2d at 431 ("What steps are reasonable in response to new information depends upon what the new information reveals.").  In compliance with the statute in effect at that time, the Auditor also published the notice in multiple ways and mailed the post-sale and issuance-of-a-tax-deed notices.[7]  But this was not the extent of the Auditor's efforts.

The Auditor engaged Valley Title to conduct a search that included the chain of title, the records of the Indiana Secretary of State, and the phonebook.  Such a search exceeded the constitutional requirements of Mullane and Flowers.  See Flowers, 547 U.S. at 236, 126 S. Ct. at 1719, 164 L. Ed. 2d at 431 (stating that the government was not "required to go this far" in response to the argument that the phonebook and government records should be searched).  Sawmill argues that this search was not sufficient to satisfy due process because there is a difference between

_____

[6] The designations given by the United States Postal Service have specific meaning relevant to this case.  "Unclaimed" means "Addressee abandoned or failed to call for mail," and differs significantly from "Not Deliverable as Addressed—Unable to Forward" which means "Mail undeliverable at address given; no change-of-address order on file; forwarding order expired."  U.S.P.S., Mailing Standards of the United States Postal Service: Domestic Mail Manual § 507.1.4.1–.2, at 837–38 (Mar. 5, 2012), available at http://pe.usps.com/cpim/ftp/manuals/dmm300/full/mailingStandards.pdf.
[7] The post-sale notice and notice of issuance of tax deed were each sent via certified mail to the same address as the pre-sale notice.  Each of these notices was also returned, stamped "NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD."  Sawmill's Exs. 20, 22.

9

"trying to *find* Sawmill" and "efforts to actually *notify* Sawmill." Appellee's Br. at 15. But this presumes that the search was conducted for no other purpose than to gather information—that the Auditor would have done nothing with any new information garnered by the search. On the contrary, the Auditor took further action based entirely upon the results of the search: the Auditor mailed three notices to the previous owner of record, Cloverleaf.[8] Sawmill contends that because the Auditor knew that Cloverleaf was no longer the owner of record, mailing notice to Cloverleaf "could [not] possibly constitute notice to Sawmill." *Id.* at 17. We would, perhaps, agree if the Auditor's only attempts at giving notice were sent to Cloverleaf or if the Auditor had otherwise discontinued sending notices to Sawmill (Saw Creek), but this was not the case. The notices mailed to Cloverleaf were sent *in addition to* the notices sent to Sawmill. Under the unique circumstances of this case, we find the Auditor's actions were reasonably calculated to provide notice to Sawmill.

The Auditor was presented with a situation in which the Property was unimproved, bare land, and the owner could not be found. The notices mailed to the address provided by Sawmill were returned with no information as to a new forwarding address. And a search of the chain of title, the records of the Indiana Secretary of State, and the phonebook could not locate a new or alternative address. In fact, the search returned no results, other than the Property, for the entity Saw Creek. Valley Title thus provided the Auditor with the known addresses for the previous owner of record. Concluding that Saw Creek may have existed in name only[9] for the purpose of holding the Property for Cloverleaf,[10] the Auditor then sent notice to Cloverleaf as well as continuing the attempt to send notice to Sawmill.

---

[8] *See supra* note 2. Two of these notices were sent via certified mail and one via first class mail. The two sent certified mail were returned, one stamped "NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD" and the other stamped "attempted not known." Sawmill's Exs. 20, 22. The first class mailing to Cloverleaf, which shared the same physical address as the Property in this case, was not returned. Tr. at 85.

[9] Of course, the entity Saw Creek did not exist in any form. It was a misnomer. But this information was neither known nor readily discoverable.

[10] The President of the title company testified as follows:

[O]ne of the things the examiner does . . . is try and confirm the addresses and we were unable to confirm that address [(Saw Creek)]. When we're unable to confirm an address . . . we assume that it's possible at least that it's a non-entity, so we notify the grantor as well in hopes that either there's some relationship or that if [they are] still the real owner and there really wasn't a conveyance into a real entity, then we've got the right owner of the property.

Tr. at 115.

Sawmill contends that the additional steps taken by the Auditor were inadequate and that the only reasonable step was to post notice on the Property. In this regard, Sawmill argues that because of the misnomer on the documents relating to the Property, there was only one method of providing notice that was reasonable when the mailed notice was returned. Or, in other words, that because the named owner of record did not exist and was thus untraceable, that the Auditor *must* post notice on the Property. We cannot agree for two reasons.

First, under the unique circumstances of this case, posting notice on the property was not a reasonable or practicable step for the Auditor to take, and in such circumstances due process does not require the government to do more. *See* Flowers, 547 U.S. at 234, 126 S. Ct. at 1718, 164 L. Ed. 2d at 430–31 ("[I]f there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing."). The Auditor knew, from reviewing the tax records, that the Property was unimproved, bare land, thus making posting a suspect form of notice. *See* Greene, 456 U.S. at 452–53, 102 S. Ct. at 1879, 72 L. Ed. 2d at 257 (noting that the efficacy of posting notice is dependent upon the nature of the property posted). The property at issue in Flowers was a residence, and thus posting was "a singularly appropriate and effective way" of providing notice. Flowers, 547 U.S. at 236, 126 S. Ct. at 1720, 164 L. Ed. 2d at 432 (quoting Greene, 456 U.S. at 543, 102 S. Ct. at 1879, 72 L. Ed. 2d at 257) (internal quotation marks omitted). The trial court's reliance on this observation from Flowers was misplaced. The Court in Greene stated that "[t]he empirical basis of the presumption that notice posted upon property is adequate to alert the owner or occupant of property of the pendency of legal proceedings would appear to make the presumption particularly well founded where notice is posted *at a residence*." Greene, 456 U.S. at 452, 102 S. Ct. at 1879, 72 L. Ed. 2d at 257 (emphasis added). This, the Court stated, was because the "tenant has a continuing interest in maintaining possession of the property for his use and occupancy." *Id.* This was the case in Flowers. It was not the case here, and the Auditor rightly distinguished the circumstances of this case.[11]

---

[11] The trial court observed that it was through the "For Sale" signs posted on the property that Sawmill ultimately learned of the tax sale. Findings of Fact, Conclusions of Law, and Judgment, Appellants' App'x at 21 n.1. But this revelation was after the fact (*post hoc*), whereas the evaluation of the constitutionality of notice is done considering the facts known at the time the attempt at notice is made (*ex*

Second, the notices for approximately 1,800 properties were returned to the Auditor in 2005 alone. The burden of posting notice on that many properties is significant.[12] In fact, the Auditor testified that it is not done because it is cost prohibitive: "Going to each of those properties, mapping them out, and getting the signage for each of those properties wouldn't be really possible time wise or financially." Tr. at 94. Were we to accept Sawmill's contention that notice must be posted on the property when the owner of record cannot be located through any reasonable means, the Auditor would be placed in an untenable position. This we cannot do.

## Conclusion

For the foregoing reasons the judgment of the trial court is reversed. Sawmill's motion to set aside the tax deed is denied.

Shepard, C.J., and Sullivan and David, JJ., concur.
Rucker, J., dissents with separate opinion.

---

ante). *See* Flowers, 547 U.S. at 231, 126 S. Ct. at 1717, 164 L. Ed. 2d at 428–29 ("[T]he constitutionality of a particular procedure for notice is assessed *ex ante* rather than *post hoc*.").

[12] The City of Indianapolis envelopes the entirety of Marion County, thus, this burden may be significantly lower in less densely populated rural counties.

**Rucker, J., dissenting.**

Due in part to the owner's inadvertence and lack of attention to detail a four acre lot, for which the owner paid $450,000.00, was sold at a tax sale for $20,000.00. Applying <u>Jones v. Flowers</u>, 547 U.S. 220 (2006) the trial court determined that the Auditor's tax sale notice was constitutionally deficient. The Court Appeals agreed and affirmed the trial court. I also agree and would likewise affirm. Therefore I respectfully dissent.