**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Sep 24 2013, 5:31 am

CLERK
of the supreme court,
court of appeals and
tax court


ATTORNEYS FOR APPELLANT:

**JAMES F. BLEEKE**
**CAROL A. DILLON**
**RACHEL A. EAST**
Bleeke Dillon Crandall, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**NATHAN MILLER**
**PATRICK SULLIVAN**
Montross Miller Muller Mendelson
& Kennedy, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

INDIANA COMMISSIONER OF INSURANCE )
STEPHEN W. ROBERTSON, on Behalf of the )
INDIANA PATIENT'S COMPENSATION )
FUND, )
)
  Appellants/Respondents, )
)
   vs. ) No. 49A04-1212-CT-652
)
KIMI CLARK, Personal Representative of the )
Estate of William Troy Clark, Deceased, )
)
  Appellee/Claimant. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable John F. Hanley, Judge
Cause No. 49D11-1205-CT-18199

**September 24, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

The Indiana Patient's Compensation Fund (PCF) appeals the trial court's award of $465,000 in damages, arguing that the trial court did not offset $550,000 already received in settlements with other defendants. Kimi Clark, as personal representative of the estate of William Troy Clark, cross appeals, claiming that the trial court erred in not awarding the estate damages for Clark's lost-earning capacity. Finding that the trial court's order was ambiguous, we reverse and remand with instructions to clarify the amount of total damages, the set off, and what damages, if any, were awarded for Clark's lost-earning capacity.

**Facts and Procedural History**

Clark was married to Kimi Clark and they had two children. He worked as a union ironworker in Terre Haute. At the beginning of 1998, Clark began having mood swings that were later diagnosed as bipolar I disorder. His behavior caused Kimi to divorce him in December 1998. After the divorce, Clark began drinking alcohol excessively. He also fell behind on his child-support payments. In December 1999, the Vigo Superior Court entered an order directing Clark's employer to withhold earnings from his paychecks to compensate for $7900 in delinquent child-support payments.

At around the same time, Clark began having legal troubles. He was arrested in January 2000. In early 2000, he moved to Savannah, Georgia to live with his mother. Shortly after moving to Georgia, he was arrested and spent ten months in jail.

While in Savannah, Clark continued to struggle with alcohol. After he was released from jail, he started drinking again.

2

On July 20, 2000, the Vigo Superior Court entered another order because of his increasing child-support delinquency. While living with his mother, Clark gave her a portion of his paychecks, and she then paid child support to the court in Vigo County.

Clark, however, lost his job and returned to Indiana in July 2001. On July 23, 2001, Clark was arrested in Vigo County for failing to pay his bill at a restaurant in Terre Haute and for having an outstanding warrant from a previous case. Ex. E, p. 1-2. While in jail, Clark suffered from alcohol-withdrawal syndrome. Because of the jail's failure to recognize and treat Clark's symptoms, he died in the Vigo County jail on July 29, 2001.

At the time of his death, Clark's children were nine and seven years old. His estate brought a claim against Vigo County and the jail physician responsible for medical care in the Vigo County jail. The county settled the claim for the maximum exposure of $300,000. Ex. 2. The jail physician settled the claim for the maximum exposure of $250,000. Ex. 9. In 2012, the estate petitioned the PCF for the remainder of its damages pursuant to Indiana Code section 34-18-14-3(c).

Before trial, the parties stipulated that "[c]laimant has recovered $550,000 for the death of William Troy Clark through settlements with Defendants in the underlying lawsuit." Appellant's App. p. 18. The trial court's sole task was to determine the amount of damages in excess of the already settled amount. Tr. p. 116.

A bench trial was held. At trial, both Clark's estate and the PCF had experts testify as to the likelihood of Clark recovering from his alcohol addiction. Dr. Campbell, the estate's witness, opined that Clark had "from a thirty to a sixty percent chance" of recovering from his alcoholism and leading a productive life. *Id.* at 30. Dr. Stevens, the

PCF's witness, was more skeptical, stating that Clark's long pattern of continuing to drink alcohol despite negative consequences made him believe that Clark was unable to stop drinking alcohol. He testified that Clark was in the worst one percent of patients in terms of alcohol dependency severity and that there was only about a five percent chance of him recovering and living a normal, productive life. *Id.* at 222-23, 235.

The trial court ruled in favor of Clark's estate "for excess damages in the amount of Four Hundred Sixty-Five Thousand Dollars ($465,000) . . ." against the PCF. Appellant's App. p. 12. In conclusion of law number seven, the trial court stated that the PCF "is responsible for up to an additional $700,000, in excess of the payments made by the underlying healthcare provider and the Vigo County jail . . . ." *Id.* at 9. In calculating the amount of liability, the trial court stated that the children are entitled to $309,000, the estate's funeral expenses are $6,089.85, and the estate's attorney's fees are $150,000. *Id.* at 11. The trial court's order is ambiguous as to whether the damages ordered are total damages or damages after the settlement payments. *See id.* at 11-12.

Clark's estate filed a motion to correct errors pursuant to Indiana Trial Rule 59(A). In its motion, the estate argued that it was entitled to both lost-earning capacity and loss of love, affection, and parental guidance. Appellant's App. p. 21. The trial court denied the estate's motion to correct errors. *Id.* at 25.

The PCF and Clark both appeal.

### Discussion and Decision

The PCF appeals the judgment of the trial court, claiming that the trial court erroneously failed to offset the $550,000 settlement from the total damages determined at

4

trial. Clark's estate also appeals, claiming that the trial court erred in not awarding the estate damages for Clark's lost-earning capacity. When a trial court enters specific findings of facts and conclusions of law, appellate review is two-tiered. *Marion Cnty. Auditor v. Sawmill Creek*, 964 N.E.2d 213, 216 (Ind. 2012). For factual conclusions, "[t]he evidence is viewed in the light most favorable to the judgment, and we defer to the trial court's factual findings if they are supported by the evidence and any legitimate inference therefrom." *Id.* at 216-17. Legal conclusions are reviewed *de novo*. *Nichols v. Minnick*, 885 N.E.2d 1, 3 (Ind. 2008).

When joint tortfeasors cause a single injury to a plaintiff, the defendant at trial is entitled to a setoff against the assessed damages in the amount that the plaintiff received from any other defendant who settled. *Palmer v. Comprehensive Neurologic Servs.*, 864 N.E.2d 1093, 1100 (Ind. 2007); *Marquez v. Mayer*, 727 N.E.2d 768, 774 (Ind. 2000). Such a requirement is consistent with the one-satisfaction doctrine, which requires courts to consider settlement agreements and credit the funds received by the plaintiff toward the judgment against co-defendants. *See Mendenhall v. Skinner & Broadbent Co.*, 728 N.E.2d 140, 145 (Ind. 2000). Indeed, "[i]t is the trial court's duty to reduce jury verdicts by amounts received in settlement to ensure that a plaintiff not receive more than a full recovery." *Palmer*, 864 N.E.2d at 1102.

Under Indiana law, if a health-care provider agrees to settle its liability and a claimant demands more than $250,000, the claimant must file a petition in court and seek payment from the PCF. Ind. Code § 34-18-15-3. The PCF assumes the liability of the

health-care provider over and above the statutory cap in the Medical Malpractice Act. *Indiana Dep't of Ins. v. Everhart*, 960 N.E.2d 129, 139 (Ind. 2012).

In calculating damages, the amount of damages must be supported by specific findings of facts that account for the total damages sustained by the plaintiff. Under Indiana law, the finder of fact must first calculate the total liability, and then the trial court must subtract the amount already received in settlement contributions from other parties. *Palmer*, 864 N.E.2d at 1101. In *Palmer*, this Court affirmed a trial court's determination that the plaintiff was entitled to no damages after a jury determined that the defendants' total liability was $375,000 and the amount received from settling parties exceeded $375,000.

Here, however, the trial court did not adequately specify whether the amount of damages awarded included a $550,000 set-off from settlements already received by Clark's estate. In its order, the trial court states that the children are entitled to $309,000, the estate's funeral expenses are $6,089.85, and the estate's attorney's fees are $150,000. Appellant's App. p. 11. Thus, the total liability of all defendants in this case would be $465,089.85. Once the trial court arrived at this figure, it should have then subtracted the amount the estate received from the defendants who settled. If the court determines that $465,089.85 is the total liability of all defendants, then subtracting the $550,000 settlement received by Clark's estate should result in no additional damages for the estate.

However, the trial court's order also states that the "total allowable excess damages in this cause of action are $465,000." *Id.* at 12. Similarly, conclusion of law

6

seven states that the PCF "is responsible for up to an additional $700,000, in excess of the payments made by the underlying health care provider and the Vigo County jail . . . ." *Id.* at 9. If the trial court intended to award $465,000 to Clark's estate, it should actually account for $1,015,000 in damages—the $465,000 damages plus the $550,000 settlement amount. Because the judgment enumerates only $465,089.85 in damages but specifically states that this amount is in excess of the settled amount, it is unclear whether the trial court actually offset the total damages by the amount received in the settlements with the Vigo County jail and the prison health-care provider.

We therefore reverse the judgment and remand with instructions to calculate the total damages to which Clark's estate is entitled and to offset those damages by the amount received from the settling defendants. In calculating such damages, the trial court should determine whether Clark's estate is entitled to damages for Clark's lost-earning capacity.

Reversed and remanded.

BAKER, J., and FRIEDLANDER, J., concur.