## FOR PUBLICATION



FILED
Aug 18 2014, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**PAMELA G. SCHNEEMAN**
Office of Corporation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re: THE 2011 MARION COUNTY )
TAX SALE, )
)
FLOOR-ESSENCE, LLC, )
)
    Appellant-Respondent, )
)
        vs. )    No. 49A02-1311-MI-934
)
MARION COUNTY AUDITOR and )
MARION COUNTY TREASURER, )
)
    Appellee-Petitioner. )

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis F. Rosenberg, Judge
The Honorable Mark A. Jones, Commissioner
Cause No. 49C01-1109-MI-33852

**August 18, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Floor-Essence, LLC, ("Floor-Essence") appeals the trial court's judgment in favor of the Marion County Auditor (the "Auditor") and Marion County Treasurer (together, the "County"). Floor-Essence raises one issue, which we revise and restate as whether the court erred in entering an order on October 15, 2012, overruling Floor-Essence's objections and ordering that tax sale deeds be issued from a tax sale. We affirm.

FACTS AND PROCEDURAL HISTORY

Floor-Essence failed to pay property taxes due with respect to three parcels of real property in Marion County, Indiana. The three parcels were adjacent to each other, and the street addresses associated with the parcels were 4503 Rockville Road (Parcel No. 9006128), 4501 Rockville Road (Parcel No. 9006131), and 14 South Vine Street (Parcel No. 9000667). The business address for Floor-Essence was 4503 Rockville Road, Indianapolis, Indiana (the "Business Address"), and the Business Address was on record with the Marion County Auditor and was the address Floor-Essence used to receive its business mail. Lisa Thomason was the principal of Floor-Essence and lived at a residence located on a parcel of real property with a street address of 20 South Vine Street, and this parcel was adjacent to the 14 South Vine Street parcel.

The Auditor sent a pre-tax sale notice dated August 5, 2011, with respect to each of Floor-Essence's three parcels to Floor-Essence at its Business Address, and the notices were sent by certified mail, return receipt requested.[1] Each notice provided that the County would apply for a court judgment in the amount of the delinquent taxes and certain other costs and for an order to sell the parcels at public auction, subject to the

---

[1] Ind. Code § 6-1.1-24-4(a) requires a county auditor to send a notice of a sale of real property by certified mail, return receipt requested, to the owner of record of the property.

right of redemption, if the amount of the judgment was not paid. The three notices sent by certified mail were returned to the office of the Auditor with a notation on the return receipt indicating that the notices were unclaimed and unable to be forwarded. The Auditor also sent duplicate pre-tax sale notices to Floor-Essence at its Business Address by first class mail.[2] The notices provided that the properties would be advertised in the local newspaper as having delinquent taxes and would be offered at a tax sale scheduled for September 22 and 23, 2011.

On September 23, 2011, the three parcels were sold at a tax sale to S & C Financial Group, LLC ("S & C Financial"). The Auditor sent by certified mail a post-tax sale notice dated May 14, 2012, with respect to each of the three parcels to Floor-Essence at its Business Address.[3] The notices indicated that the parcels had been sold at the tax sale, that the period of redemption would expire on September 24, 2012, that if the parcel was not redeemed before the expiration of the redemption period the tax sale purchaser, S & C Financial would be entitled to receive a tax deed, and that the County intended to file a petition for a tax deed on or after September 24, 2012. In addition, the Auditor sent by certified mail copies of the post-tax sale notices to Floor-Essence, care of Attorney Steven J. Glazier at his office in Indianapolis,[4] and Michael J. Smith in Beech Grove.[5]

---

[2] Ind. Code § 6-1.1-24-4(a) provides: "In addition, the county auditor shall mail a duplicate notice to the owner of record . . . by first class mail to the owners from whom the certified mail return receipt was not signed and returned."

[3] Ind. Code § 6-1.1-25-4.5(a) provides in part and under certain circumstances that a purchaser is entitled to a tax deed only if "the county auditor [] gives notice of the sale to the owner of record at the time of the sale . . . ."

[4] While Thomason testified that Glazier was "an old attorney that actually started [her] LLC," Transcript at 25, Glazier was the registered agent for Floor-Essence during part of these proceedings.

The Auditor also sent by first class mail notice of the sale of the 4503 Rockville Road parcel to the occupants of 4501 Rockville Road, the notice of the sale of the 14 South Vine Street parcel to the occupants of 14 South Vine Street, and the notice of the sale of the 4501 Rockville Road parcel to the occupants of 4501 Rockville Road, Floor-Essence at its Business Address, and to Floor-Essence, care of Attorney Steven J. Glazier at his office in Indianapolis.

Following the expiration of the redemption period, the Auditor sent by certified mail a Notice of Filing Petition for Tax Deed with respect to each of the three parcels to Floor-Essence at its Business Address, to Floor-Essence care of Attorney Glazier, and to Michael Smith.[6] The Auditor also sent by first class mail a Notice of Filing Petition for Tax Deed with respect to the 4503 Rockville Road parcel to the occupants of 4501 Rockville Road, with respect to the 14 South Vine Street parcel to the occupants of 14 South Vine Street, and with respect to the 4501 Rockville Road parcel to Floor-Essence at its Business Address, Attorney Glazier, and the occupants of 4501 Rockville Road. These notices regarding the filing of the petitions for tax deeds provided that the parcels had been sold on September 23, 2011, that the parcels had not been redeemed before the expiration of the redemption period, that on or after November 5, 2012, petitions for an

---

[5] When asked why a notice was sent to Michael Smith, Brandon Colbert, a tax sale specialist with the Auditor, testified that "[t]he title company that we use, that go . . . up to twenty (20) years of ownership on property and mail out noticing to all those that have had some kind of connection to the property in order to try to get in contact with the actual owner of the property to let them know that the property was sold in the tax sale." Transcript at 48-49.

[6] Ind. Code § 6-1.1-25-4.6(a) provides in part and under certain circumstances that, after the expiration of the redemption period, the county auditor shall, upon the request of the purchaser, file a petition "asking the court to direct the county auditor to issue a tax deed if the real property is not redeemed from the sale."

order directing the Auditor to issue tax deeds had been filed in the court, and that any person having an interest in the parcels may file a written objection to the petition with the court within thirty days after the date of the petition and, if the objection was timely filed, the court would conduct a hearing.

On December 6, 2012, Floor-Essence filed an Amended Objection to Tax Sale Deed Transfer and Request for Hearing with respect to each of the three parcels.[7] The amended objections alleged that the notices were not in substantial compliance with relevant statutory requirements, that notice provided was not reasonably calculated to apprise the property owner of a pending tax sale, and that the notice received after the sale did not cure the due process concerns. On December 21, 2012, S & C Financial filed a petition to intervene with respect to each of the three parcels, on December 27, 2012, S & C Financial filed a Response to Objection for each parcel, and on February 26, 2013, the court granted S & C Financial's petition to intervene.

On July 9, 2013, the court held a hearing at which Thomason testified that she never received any mail, whether sent certified or first class, at either the Business Address or her home address indicating that the properties were subject to a tax sale. She testified that the first time she became aware of the issue was when she went to collect rent from one of her tenants and learned that a business card had been left behind which stated that the person who left the card had purchased the property through a tax sale. Thomason testified she attempted to contact the person who left the business card but never received a return phone call. The court also admitted documentary evidence of the

---

[7] The record does not include copies of the original filings.

notices and a printout showing addresses the Auditor had on file and heard testimony from Brandon Colbert, a tax sale specialist with the Auditor, regarding the notices and the methods by which they were sent. The court continued the hearing for the presentation of additional evidence.

On July 17, 2013, the court resumed the hearing on the objections of Floor-Essence. An exhibit of a photograph showing the mailboxes on the building on the parcels was admitted into evidence. Thomason testified the photograph depicted the "the front entrance, like a courier door, to . . . the office sections . . . [of] the main building." Transcript at 133. She testified that the address of the main building was "for all legal purposes, 4503," and when asked what she meant, responded "[a]nything that has to do with, oh Lordy, when we purchased the property, to registering through the State, to any---anything like has to do---the main address is 4503." Id. at 134. Thomason testified that a main building "rests on 4501 [Rockville Road], 4503 [Rockville Road], and then the very end of the building, which is long and narrow, lands on 14 . . . Vine Street." Id. at 134. She further testified that the building contained retail office space, which faced Rockville Road, and a warehouse section. She testified there were six subdivisions of the building, that "4501 was divided into three (3) suites," that Floor-Essence received its mail at 4503 Rockville Road, that there was a mailbox for 4503 Rockville Road, and that all of the mailboxes depicted in the exhibit were functioning in 2011. Id. at 135. When asked if "those mailboxes lock at all," Thomason answered "No." Id. at 137.

Thomason further testified that one end of her residence, located primarily on the parcel with a street address of 20 South Vine Street, physically encroaches "[p]robably

four (4) to six (6) feet onto lot 14." Id. at 140. She indicated that she received business mail for Floor-Essence at 4503 Rockville Road, that the business still existed, that she had been at the address since 2005, and that she never refused to accept certified mail. Thomason testified that any of the tenants or anybody walking up and down Rockville Road has access to the mailboxes, that she was at the building daily, and that she went to the tenant at "4501 Suite A" and the tenant handed her "a business card stating that he was--he's the new owner, and he was awaiting deed." Id. at 144. Thomason also stated she did not receive any post-tax sale notices, and that she lived at the residence since October of 2005.

When asked on cross-examination, "[y]ou'll recall that you indicated that you knew through the receipt of tax bills, that the properties were delinquent," Thomason testified "[o]nly one (1) property was aware of---and that was only through my own records." Id. at 147. When questioned further, she indicated that she was aware that her tax obligation for the 4501 Rockville Road parcel was delinquent. When asked about the status of the other two properties, she testified: "I thought they were up and current. And I had taken into the office a partial payment, and . . . the lady at the desk had told me I could not submit a partial, cause that's---at the time, that's all that I had on me." Id. at 148. When asked later if she had been "trying to make partial payments on all three (3) properties," Thomason stated "just the 4503 and then I tried to make half of 4501 and they would not accept the partials. And at that point, I had it all wrapped into one (1) certified check." Id. at 151. Thomason stated she did not recall the date she attempted to

7

make a partial payment. When asked about "having trouble receiving mail," Thomason testified:

> Well, throughout the time actually, a lot of---my mailman's lazy. I hated to say it, but he's really lazy. I mean, when I first purchased the property, he raised Cain with me. I said---he says, I hope you don't like Caskets, which was the prior owners, having mail sent to many different addresses on this property, of---you know, claiming different businesses and this and that. It's like, no, shouldn't have any issues. It took us a while to get the whole mail system, because when I purchased this property, it---there were six (6) lots. And it was a lot of confusion, and still to this day I'm having trouble getting utility bills, so---and just other mail.

Id. at 154.

Melissa Tomlin, an employee of the Auditor, testified that "any mail that's returned, we scan it into a system we call file net, and so everything that's returned to us, all notices that weren't delivered, we scan in. So if we had anything returned, it would be in our file net system." Id. at 160. When asked, "in regards to these three (3) parcels today, [] were you able---had you checked your [] file net," and Tomlin testified "Yes. I checked all three (3) parcels and there were no first class returned mail." Id. Tomlin indicated on cross-examination that she did not know what happened to mail that a postman would deem non-deliverable for any reason and that she has known it to happen that an item of mail is lost.

Counsel for Floor-Essence argued that the Auditor did not attempt to find out "what type of property it was dealing with," that "[s]imple additional steps could have been taken, which were not," that the roll of attorneys could have been checked to "be sure [it had] the right address for the attorney listed, [which] would not be unduly cumbersome," that "posting a sign at the residence or in front of the business would have

8

been a simple, cost effective measure the Auditor's Office could have taken," and that "I'm not entirely certain that due process wouldn't require an effort to get personal service under the circumstances on my client and her residence." Id. at 167-168. Counsel for the County argued that the Auditor sent the notices as required by statute, the notices were sent by certified mail and first class mail, they were sent to the Business Address of Floor-Essence, and none of the first class mailings were returned to the office of the Auditor. The County further argued that the Auditor "is not required to post and does not have to" and that "[a]fter not receiving any first class mailings back, it's safe to assume that the Auditor---Auditor would assume that, because those were not returned, that in fact the owner of record received these [] notices." Id. at 170. Counsel for S & C Financial argued that the Auditor "more than complied" with the notice statutes, that there was conflicting testimony regarding what the owner of Floor-Essence believed regarding the delinquency of taxes for the parcels, that he could not "imagine anything more that the county could have done to . . . provide good and adequate notice constitutionally effective . . . to handle this sort of tax sale situation," that Marion County is the largest county in Indiana, and that the Auditor is not required to "drive around town, posting signs . . . ." Id. at 170, 172. Counsel for Floor-Essence argued that Thomason's residence was in close proximity to the three parcels and occupies a part of one of the parcels, Thomason was not an absentee property owner, that the mailboxes were open and accessible to anybody, there were other issues with mail, it is free and easy to check the attorney's address, the problem with the title search was that it was retrospective, and the title search may not be adequate to update the Auditor's database.

9

Counsel for S & C Financial argued that the Business Address was "not a bad address." Id. at 178. Counsel for Floor-Essence noted that some of the mail was returned and some was not.

On October 15, 2013, the court issued Findings of Fact and Conclusions of Law Overruling Floor-Essence's Objection and Amended Objection to Tax Sale Deed Transfer. Under the heading "Findings of Fact," the court found in part that "Floor-Essence has occupied the warehouse portion of the large building sitting on parcels 9006131 and 9006128 at 4503 Rockville Rd. for many years preceding the tax sale, and continues to occupy the space today" and that attached to the large building "are functioning, unlocked mailboxes that are accessible to any of the tenants or anyone passing by." Appellant's Appendix at 5. The court found that the Auditor sent pre-sale notices pursuant to the statute, duplicate copies of the pre-sale notices were sent via first-class mail, the Auditor sent statutorily required post-sale notices via both certified and first-class mail, the Auditor sent the statutorily required notice that a motion had been filed requesting issuance of a deed to the tax sale purchaser, and that to date, none of the first-class notices sent by the Auditor had been returned to the Auditor. The court also found that "Thomason knew, based upon her own records, that taxes were delinquent on the properties owned by Floor-Essence," that "[s]ometime during 2012 she had paid property taxes on at least one of the other parcels that she or [Floor-Essence] owned, and she presented, in-person, partial payment amounts on the others in the form of certified checks," and that "[s]he was at that time advised that partial payments would not be accepted; however, she was not informed at that time that the Parcels were being, or had

10

been, sold at tax sale." Id. at 6. Further, the court found that, "[s]ometime in December, 2012, a person physically visited the property and introduced himself to some of the tenants as either the new owner or as an agent for the new owner, and he left a business card with a tenant." Id. Under the heading "Conclusions of Law," the court concluded that "[t]he Auditor's pre-sale notice via certified mail, return receipt requested, in conjunction with the other pre-sale notices sent, complied with the relevant statutes and constitutional requirements," that "[t]he post-sale notices that the property could be redeemed complied with the relevant statutes and constitutional requirements," and that "[n]one of the notices statutorily required to be sent by the Auditor's Office apparently served to provide actual notice of the sale, but actual notice is not required either statutorily or constitutionally." Id. at 11. The court overruled Floor-Essence's objections and ordered that the tax sale deeds be issued from the sale.

## DISCUSSION

The issue is whether the trial court erred in entering the October 15, 2013 order overruling the objections of Floor-Essence and ordering that tax sale deeds be issued from the tax sale. The trial court entered findings and conclusions. We first determine whether the evidence supports the findings and then whether the findings support the judgment. Marion Cnty. Auditor v. Sawmill Creek, LLC, 964 N.E.2d 213, 216 (Ind. 2012). We will not set aside the findings or judgment unless clearly erroneous. Id. In reviewing the findings we neither reweigh the evidence nor reassess the credibility of the witnesses. Id. The evidence is viewed in the light most favorable to the judgment, and we will defer to the trial court's factual findings if they are supported by the evidence and

11

any legitimate inferences therefrom.  Id. at 216-217.  Legal conclusions are reviewed *de novo*.  Id. at 217.  A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts.  Id.

When an owner of real estate fails to pay property taxes, the property may be subject to sale in settlement of the delinquent taxes.  Sawmill Creek, 964 N.E.2d at 217. Before the government may sell property due to unpaid property taxes, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the government to provide the owner with "notice and opportunity for hearing appropriate to the nature of the case."  Id. (quoting Jones v. Flowers, 547 U.S. 220, 223, 126 S. Ct. 1708, 1712 (2006)).  Due process does not require that a property owner receive actual notice before the government may take his property.  Prince v. Marion Cnty. Auditor, 992 N.E.2d 214, 219 (Ind. Ct. App. 2013) (citing Jones, 547 U.S. at 226), trans. denied. Rather, the government must provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  Id.  "But if with due regard for the practicalities and peculiarities of the case these [notice] conditions are reasonably met, the constitutional requirements are satisfied."  Sawmill Creek, 964 N.E.2d at 219 (citation omitted).

> In Indiana, title conveyed by a tax deed may be defeated if three required notices, specifically the notice of tax sale, the notice of the right of redemption, and the notice of petition for tax deed, are not in substantial compliance with statutory requirements.  The notice of tax sale is governed by Indiana Code section 6-1.1-24-4 (2007), which requires the county auditor to send notice of the tax sale by certified mail to the owner or owners of the real property at their last known address.

Next, Indiana Code section 6-1.1-25-4.5 (2007) governs notices of the right of redemption. According to that statute, a person who purchases property at a tax sale must send the owner of the property a notice of the sale and of the right of redemption via certified mail at the last address for the owner as indicated in the county auditor's records.

Finally, if the owner of record does not redeem the property from the tax sale within the required period, the purchaser may petition the trial court for issuance of a tax deed. Ind. Code § 6-1.1-25-4.6 (2007). The purchaser must provide notice of the petition to the owner of record in the same manner set forth in Indiana Code section 6-1.1-25-4.5. Ind. Code § 6-1.1-25-4.6.

Prince, 992 N.E.2d at 219-220 (citations omitted).

In this case, the Auditor sent the required notices to Floor-Essence under Ind. Code §§ 6-1.1-24-4, -25-4.5, and -25-4.6, and Floor-Essence does not appear to argue on appeal that the notices were not in substantial compliance with the statutory requirements. While the notices under Ind. Code § 6-1.1-24-4 sent by certified mail were returned unclaimed, the Auditor sent duplicate notices to Floor-Essence by first class mail which were not returned. Further, the Auditor sent notices under Ind. Code § 6-1.1-25-4.5 and later under Ind. Code § 6-1.1-25-4.6 to Floor-Essence, Attorney Glazier, and the occupants of 4501 Rockville Road and 14 South Vine Street. The record reveals that none of the notices sent by first class mail, including those sent before and after the tax sale, were returned to the Auditor. We also note that the Auditor sent notice to all of the addresses of which it was aware, including to Floor-Essence at its Business Address and care of Attorney Glazier and to the occupants of the parcels, and the Auditor obtained a title search in an attempt to find additional addresses for the owner. The Auditor was not required under these circumstances, where it sent multiple notices to several addresses of

13

which it was aware, to conduct an "open-ended search for a new address" in other government records. See Sawmill Creek, 964 N.E.2d at 218. Further, Floor-Essence does not point to authority that the Auditor was required to determine that no structure or residence encroached upon a parcel subject to a tax sale prior to issuing notices under Ind. Code §§ 6-1.1-24-4, -25-4.5, and -25-4.6, and the fact that the residence on the parcel at 20 South Vine Street encroached several feet upon the parcel at 14 South Vine Street, a fact which Floor-Essence does not assert the Auditor knew, did not require the Auditor to take additional steps to comply with the notice statutes. Thomason testified that she was aware that the taxes for at least one of the three parcels was delinquent. The Auditor provided notice reasonably calculated under all the circumstances to apprise Floor-Essence of the pendency of the action, and with due regard for the practicalities and peculiarities of this case, the notice conditions were reasonably met.

Based on the evidence set forth above and in the record, we find the Auditor substantially complied with the statutes governing the notices and that the manner of service was reasonably calculated under all the circumstances to apprise Floor-Essence of the pendency of the action and afford it an opportunity to object. See Prince, 992 N.E.2d at 220 (concluding the auditor substantially complied with the notice statutes and the manner of service was reasonably calculated under all the circumstances to apprise the owner of the pendency of the action and afford him an opportunity to object where the auditor sent notice of the tax sale, notice of the right of redemption, and the notice of petition for tax deed to the building and a post office box address for the owner by certified and first class mail, the auditor obtained a title search on the parcels in an effort

14

to locate additional addresses, and none of the notices sent by first class mail were returned to the auditor) (citing Sawmill Creek, 964 N.E.2d at 220 (determining that the county auditor's manner of service satisfied due process requirements, despite the property owner's failure to receive actual notice, because the auditor published notices in multiple ways, mailed notices to all addresses of which it was aware, and obtained a title search in an attempt to find additional addresses for the owner)).  The trial court did not abuse its discretion in concluding the Auditor's notices regarding the tax sale process met the requirements of due process.  See Id. at 221.

## CONCLUSION

For the foregoing reasons, we affirm the court's October 15, 2013 judgment.

Affirmed.

BARNES, J., and BRADFORD, J., concur.