## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2016, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas B. O'Farrell
McClure/O'Farrell
Noblesville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Roger Lee Kilburn,

*Appellant-Respondent,*

v.

Deirdre V. Kilburn,

*Appellee-Petitioner.*

March 31, 2016

Court of Appeals Case No.
29A04-1502-DR-77

Appeal from the Hamilton
Superior Court

The Honorable Wayne A.
Sturtevant, Judge

Trial Court Cause No.
29D05-1402-DR-1226

**Pyle, Judge.**

## Statement of the Case

[1] Roger Kilburn ("Husband") appeals the trial court's order upon the dissolution of his marriage to Deidre Kilburn ("Wife"). Husband argues that the trial court

abused its discretion by awarding rehabilitative maintenance and the marital residence to Wife. Because Husband has not shown any abuse of discretion in the trial court's award of rehabilitative maintenance and because Husband's specific challenge regarding the marital residence is not ripe for review, we affirm the trial court's judgment.

We affirm.

## Issue

Whether the trial court abused its discretion by awarding rehabilitative maintenance and the marital residence to Wife.

## Facts

Husband and Wife were married in December 2011, and no children were born from the marriage.[1] At the time of their marriage, Husband was retired from the Carmel Fire Department, where he had worked for almost twenty years. Husband was also receiving disability benefits. Wife, who had served in the United States Navy, worked full-time for the Indiana Bureau of Motor Vehicles. Shortly thereafter, in October 2012, Wife was declared disabled and started to receive disability benefits.

After two years of marriage, Wife filed a petition for dissolution of the marriage in February 2014. She also filed a petition requesting that the trial court award

---

[1] Both spouses had previously been married and had children from those marriages.

her spousal maintenance. The trial court held a final dissolution hearing on September 17, 2014 and December 5, 2014.[2] Thereafter, on February 9, 2015, the trial court issued a thirty-four page decree of dissolution, which contained extensive and thorough findings of fact and conclusions of law. The trial court ordered, in relevant part, that:

> 3. The marital residence located at 16967 Southall, Westfield, Indiana is set off to Wife as her sole and separate property, together with the responsibility for the pay[m]ent of the mortgage thereon.
>
> 4. Wife shall have 180 days from the date of this order to remove Husband's name from the mortgage associated with the [marital] residence.
>
> * * * * *
>
> 18. Husband shall pay rehabilitative maintenance to Wife in the amount of $1,000 per month for a period of 12 months commencing on March 1, 2015.
>
> 19. The parties shall have 30 days from the date of this order to execute all deeds, titles, sales disclosures, or other necessary transfer documents to effectuate the Court's distribution of the marital estate ordered herein.

(App. 39, 41). Husband now appeals.

---

[2] The trial court also reviewed and decided several pending motions that had been filed by the parties.

# Decision

Husband challenges the trial court's awards contained in the dissolution decree. Specifically, he argues that the trial court abused its discretion by: (1) ordering him to pay rehabilitative maintenance to Wife; and (2) awarding the marital residence to Wife.

Before we address Husband's arguments, we note that Wife did not file an appellee's brief. When an appellee fails to submit an appellate brief, "'we need not undertake the burden of developing an argument on the [A]ppellee's behalf.'" *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014) (quoting *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)). Rather, "'we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error.'" *Id.* (quoting *Trinity Homes*, 848 N.E.2d at 1068). "Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (internal quotation marks and citation omitted).

As we review Husband's challenges to the trial court's dissolution decree, we observe that the trial court entered written findings and conclusions under Indiana Trial Rule 52(A) pursuant to Husband's request. Where the trial court has entered such findings and conclusions, we apply a two-tiered standard of review. *See Marion Cnty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213, 216 (Ind. 2012). "We first determine whether the evidence supports the findings and then whether the findings support the judgment." *Id.* We "shall not set aside the findings or judgment unless clearly erroneous." Ind. Trial Rule 52(A).

When determining whether a finding or judgment is clearly erroneous, we may neither reweigh the evidence nor reassess the credibility of the witnesses. *Sawmill Creek,* 964 N.E.2d at 216. "The evidence is viewed in the light most favorable to the judgment, and we will defer to the trial court's factual findings if they are supported by the evidence and any legitimate inferences therefrom." *Id.* at 216-17. A trial court's legal conclusions, however, are reviewed de novo. *Id.*

[8] We first address Husband's challenge to the trial court's award of spousal maintenance to Wife. "The court's power to award spousal maintenance is wholly within its discretion[.]" *Spivey v. Topper*, 876 N.E.2d 781, 784 (Ind. Ct. App. 2007). "'The presumption that the court correctly applied the law in making an award of spousal maintenance is one of the strongest presumptions applicable to the consideration of a case on appeal.'" *Id.* (quoting *Fuehrer v. Fuehrer*, 651 N.E.2d 1171, 1174 (Ind. Ct. App. 1995), *reh'g denied*, *trans. denied*).

[9] "A trial court may award only 'three, quite limited' varieties of post-dissolution maintenance: spousal incapacity maintenance, caregiver maintenance, and rehabilitative maintenance." *Zan v. Zan*, 820 N.E.2d 1284, 1287-88 (Ind. Ct. App. 2005) (quoting *Voigt v. Voigt*, 670 N.E.2d 1271, 1276 (Ind. 1996) and citing IND. CODE § 31-15-7-2). At issue in this appeal is rehabilitative maintenance. INDIANA CODE § 31-15-7-2(3) authorizes a trial court to award rehabilitative maintenance to a spouse for up to three years when the spouse needs support while obtaining employment-related education or training. Specifically, this subsection of the spousal maintenance statute provides that:

(3) After considering:

> (A) the educational level of each spouse at the time of marriage and at the time the action is commenced;

> (B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;

> (C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and

> (D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;

a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree.

I.C. § 31-15-7-2(3).

[10]  Here, the trial court ordered Husband to pay rehabilitative maintenance to Wife in the amount of $1,000 per month for twelve months. When doing so, the trial court made the following relevant findings:

> FINDINGS REGARDING MAINTENANCE/DISABILITY/ RETIREMENT PLANS

> 116. Husband receives a lifetime monthly benefit from the CFD [Carmel Fire Department] through the Indiana Public Retirement System ("INPRS") in the amount of $2,307.63.

117. At age 52, per INPRS, Husband's benefit will automatically convert to a retirement benefit.

118. Dan Andrews, a qualified pension valuation expert, prepared a report admitted into evidence as Petitioner's Exhibit 5 and testified that Husband's benefit after it is converted into a retirement benefit at age 52, has a present value of $772,200.07.

119. Husband also receives disability benefits ("SSDI") from the Social Security Administration in the amount of $2,232 a month.

120. Husband's monthly benefits therefore total approximately $4,560.

121. Husband was in retirement or benefits status on the date of the marriage and therefore Husband's pension benefits were earned entirely before the marriage.

122. Husband presented as evidence a Trial Order issued by an administrative law judge . . . [who] acknowledged that [H]usband suffers from post-traumatic stress disorder (PTSD).

123. In addition, Husband suffers from medical issues that have already required two back surgeries, and he testified that additional surgeries will be required. It was a combination of Husband's physical and emotional issues that caused him to retire from the Carmel Fire Department, and the physical issues caused him to close out his side business.

124. Wife is 45 years old and was a member of the United States Navy prior to the marriage but did not see service overseas or in a combat zone. She worked at the Indiana Bureau of Motor Vehicles during the marriage.

125. Wife became disabled during the marriage and was diagnosed with PTSD.

126. Wife is on various medications to treat her PTSD.

127. Wife testified that she had attempted, through the Veteran's Administration ("VA"), to seek resources for occupational therapy to return to work.

126. [sic] The medication and occupational therapy to this point have not been successful.

129. Wife testified she has trouble focusing and staying on task and therefore is unable to work.

130. The Court saw no evidence regarding Wife's behavior through numerous court hearings in this cause that support a lack of focus or an inability to stay on task.

131. Wife's sources of income are: INPRS monthly benefit in the amount of $180.38; SSDI monthly benefit in the amount of $975; SSDI dependent derivative monthly benefit in the amount of $400; and child support for her minor child of $477 a month, for a total of $2,032.38 per month.

132. Somewhat more than $850 per month of Wife's income is for the support of her minor son who is 16 years old, and that portion will be reduced or eliminated after the child is 18 and/or emancipated.

133. Similar to Husband's INPRS benefit, Wife's benefit will also convert to a retirement benefit when Wife attains age 52.

134. Dan Andrews also prepared a report admitted into evidence as Petitioner's Exhibit 6 and testified that the present value of Wife's benefit, after it is converted to a retirement benefit, is $49,641.63.

135. Wife had a retirement account with Hoosier Start valued at $8,815 on the date of filing. With the consent of the Court, Wife was allowed to use this account to satisfy some of her attorney's fees incurred in this matter.

136. Wife requested that Husband pay $2,500 per month by the first of the month via direct deposit into her checking account for the next 14 years or until he has paid a total of $420,000, whichever occurs first.

137. Wife is mentally incapacitated, and that incapacity at this time materially affects her present ability to be self-supporting.

139. [sic] Each party shall be awarded as their sole and exclusive property their interest in their respective PERF accounts, and Wife shall be awarded as her sole and exclusive property the Hoosier Start retirement account.

140. [sic] Spousal or rehabilitative maintenance is ordered in the amount of $1,000 per month for a period of 12 months commencing on March 1, 2015.

(App. 32-35).

[11] Husband's challenge to the award of rehabilitative maintenance is limited to his contention that the trial court was required to include a specific finding that Wife "needs support while acquiring sufficient education or training to get an appropriate job" and that the failure to include such a finding precluded the trial court from ordering such an award. (Husband's Br. 12). In support of his contention, Husband cites to our supreme court's opinion in *Voigt*, in which it discussed the three statutory categories of spousal maintenance[3] and explained that "a court may order rehabilitative maintenance for no more than three years

---

[3] The *Voigt* Court discussed the categories of spousal maintenance contained in INDIANA CODE § 31-1-11.5-11(e), which contained identical language as the categories of spousal maintenance contained in INDIANA CODE § 31-15-7-2, the current statute.

if it finds that a spouse needs support while acquiring sufficient education or training to get an appropriate job." *Voigt*, 670 N.E.2d at 1277. Essentially, Husband's argument is that the trial court's order was erroneous because it did not mirror the language contained in the *Voigt* opinion.

[12] Contrary to Husband's contention, the *Voigt* Court did not hold that a trial court must include any specific language or "magic words" in its findings when awarding rehabilitative maintenance. While INDIANA CODE § 31-15-7-1 provides that a trial court "may order maintenance . . . after making the findings required by section 2[,]" the plain language of the subsection of INDIANA CODE § 31-15-7-2 relating to rehabilitative maintenance makes clear that the trial court must first "consider[]" multiple factors before it exercises its discretion and "find[s] that rehabilitative maintenance . . . is necessary in an amount and for a period of time that the court considers appropriate[.]" I.C. § 31-15-7-2(3). Furthermore, the statute does not require a trial court to make specific findings regarding the enumerated considerations before awarding rehabilitative maintenance. *See Moore v. Moore*, 695 N.E.2d 1004, 1008 (Ind. Ct. App. 1998) (discussing the requirements of awarding rehabilitative maintenance under the prior version of the maintenance statute).

[13] Husband makes no specific argument that the trial court did not make the necessary considerations before finding that rehabilitative maintenance in the amount of $1,000 per month for a period of twelve months would be awarded to Wife. Indeed, "[t]his court will presume that the trial court properly considered the applicable statutory factors in reaching its decision" regarding an

award of rehabilitative maintenance. *Moore*, 695 N.E.2d 1007. Because Husband has not overcome the "presumption that the court correctly applied the law in making an award of spousal maintenance" and has not shown that the trial court abused its discretion by awarding rehabilitative maintenance to Wife, we affirm the trial court's award of spousal rehabilitative maintenance. *See Spivey,* 876 N.E.2d at 784.

[14] Lastly, we address Husband's challenge to the trial court's order regarding the marital residence, which the trial court included in the marital pot and awarded to Wife.

[15] The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Love v. Love*, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). "The court has discretion in its decision to award marital property, including the marital residence." *Smith v. Smith*, 854 N.E.2d 1, 7 (Ind. Ct. App. 2006). In an action for dissolution of marriage, the trial court is required to divide the marital property in a "just and reasonable manner." I.C. § 31-15-7-4(b). *See also Fobar v. Vonderahe,* 771 N.E.2d 57, 58 (Ind. 2002). "[A]lthough the trial court must include all assets in the marital pot, it may ultimately decide to award an asset solely to one spouse as part of its just and reasonable property division." *Wanner v. Hutchcroft*, 888 N.E.2d 260, 263 (Ind. Ct. App. 2008).

[16] Here, the trial court entered the following specific findings regarding its award of the marital residence to Wife:

## FINDINGS REGARDING MARITAL RESIDENCE

51. The parties owned real estate located at 16967 Southall, Westfield, Indiana ("Southall") at the date of filing.

52. Wife owned the real estate prior [to] the marriage[,] and she has occupied the same since the date of filing.

53. There is a Veterans Administration backed mortgage on the property held by Freedom Mortgage, and the balance of the mortgage at the date of filing was approximately $139,645.

54. Pursuant to a provisional order, Husband was required to pay the mortgage and has done so since March of 2014.

55. Karey Bredemeyer, a licensed real estate broker, prepared a Comparative Market Analysis ("CMA") of Southall and testified that in move-in condition, the marital residence could be listed for sale, based on the current market, for a range of $135,000 to $145,000.

56. Mr. Bredemeyer did not inspect the inside of the property as part of preparing the CMA.

57. Wife testified that Southall was in need of some repairs and updating.

58. The Hamilton County Assessor valued Southall at $120,700 for property tax purposes. This is not the fair market value of the property.

59. Based on the evidence, including Mr. Bredemeyer's testimony and Wife's testimony, the Court finds the value of Southall to be $130,000. The parties have no equity in the property.

60. Both Husband and Wife requested possession of Southall.

61. Wife wants to retain the property as being her prior marital residence and as a home for her son as he completes Westfield High School.

62. Wife testified she had begun the process of applying to obtain financing on Southall in her own name. Wife's mother testified that she would be willing to help Wife co-signing for any mortgage.

63. Testimony indicated that although Wife brought the real estate into the marriage, she was delinquent in her mortgage payments and the property was near or in foreclosure when Husband first moved in and began making the mortgage payment at her request while she would pay "other bills". The parties refinanced the property so that Husband could be added to the mortgage obligation and the payments brought current.

64. Evidence also shows that Husband made substantial improvements to [the] property . . . .

65. Since the provisional hearing in this cause, and perhaps before the hearing, Husband has been the sole contributor to the mortgage payments associated with the marital residence.

66. At the time of the marriage, Wife was fully employed and was unable to meet the mortgage obligation and other expenses involved with the house. At the time of the preliminary hearing, Wife was unable to afford those expenses. Since that time, her economic circumstances have not improved.

67. If Wife is unable to refinance the mortgage and remove Husband's name from the mortgage and is unable to maintain the mortgage payments going forward, this will negatively affect the credit of both Husband and Wife.

68. Husband testified that he no longer wants to retain the marital residence but believes that Wife is unable to afford to

keep the home. He wants the home set off to him so that he can sell it.

69. The house should be set off to Wife.

(App. 22-25).

[17] Husband's challenge to the trial court's order regarding the marital residence does not actually involve the present award of the residence to Wife. Indeed, he acknowledges that "this appears to be a standard property division order[.]" (Husband's Br. 14). Instead, his challenge is limited to what may happen in the future in the event that Wife does not obtain a refinanced mortgage on the house and remove him from the mortgage. He contends that if that occurs, then he "will be compelled to write mortgage checks from his disability income for as long as [Wife] owns the home and fails (or chooses) not to pay the mortgage." (Husband's Br. 15-16). Thus, he asserts that the trial court's award of the marital residence to Wife would essentially result in "*de facto* alimony or long-term maintenance[.]" (Husband's Br. 16).

[18] It is clear that Husband's argument is not ripe for appellate review. "Ripeness relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities, and are capable of being adjudicated on an adequately developed record." *Indiana Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt., Inc.*, 643 N.E.2d 331, 336 (Ind. 1994). *See also In re Paternity of M.G.S.*, 756 N.E.2d 990, 1004 (Ind. Ct. App. 2001) ("Ripeness involves the timing of judicial review and the principle that judicial machinery should be conserved for problems that are real and present or imminent, not squandered

on problems that are abstract or hypothetical or remote."), *trans. denied*. Because Husband's challenge to the trial court's award of the marital residence focuses on possible future ramifications that may arise if Wife fails to refinance the mortgage on the marital residence and if Husband then makes payments on the existing mortgage, it is not ripe for review. Thus, we affirm the trial court's judgment.

[19]     Affirmed.

Vaidik, C.J., concurs.

Robb, J., concurs in part and dissents in part with opinion.

| | |
|---|---|
| Roger Lee Kilburn, | Court of Appeals Case No. |
| *Appellant-Respondent,* | 29A04-1502-DR-77 |
| v. | |
| Deirdre V. Kilburn, | |
| *Appellee-Petitioner.* | |

## Robb, Judge, dissenting in part and concurring in part

The majority determines that the trial court did not abuse its discretion in awarding rehabilitative maintenance to Wife. I disagree on two fronts.

First, I disagree that what the trial court awarded was in fact rehabilitative maintenance. *See* slip op. at ¶ 9 ("At issue in this appeal is rehabilitative maintenance," citing Ind. Code § 31-15-7-2(3)). The trial court did state in its order that Husband was to pay $1,000 per month in "rehabilitative maintenance" to Wife for a period of twelve months. App. at 41. However, the standard the trial court employed in determining whether maintenance was warranted was that for incapacity maintenance:

> To award spousal maintenance under Ind. Code § 31-15-7-2(1), the trial court must first make a threshold determination that (1)

> a spouse is physically or mentally incapacitated, and (2) the incapacity materially affects the spouse's self-supportive ability. If the trial court finds that a spouse is incapacitated, it then has the discretion to award maintenance. *Marriage of Richmond*, 605 N.E.2d [226,] 228 [(Ind. Ct. App. 1992)].

App. at 19. Further, the trial court's findings concern incapacity maintenance: Wife became disabled during the marriage when she was diagnosed with PTSD and is unable to work, she is on various medications to treat PTSD, and the medications and occupational therapy have not been successful treatments allowing her to return to work. As a result, the trial court found that "Wife is mentally incapacitated, and that incapacity at this time materially affects her present ability to be self-supporting." *Id.* at 35; *see also* Exhibit 31 (summary of Wife's requests, asking the trial court find "Wife is unable to work due to her disability" and order Husband to pay a certain monthly sum "as disability maintenance"). On the other hand, there was no evidence introduced at trial and the trial court made no findings that would support a conclusion Wife was in need of support while acquiring sufficient education or training to get an appropriate job. *See* Ind. Code § 31-15-7-2(3). Wife had appropriate employment which she was unable to continue because she became disabled. The trial court may not be required to use any "magic words" in its findings, *see* slip op. at ¶ 12, but it must make findings that support its judgment. Therefore, to the extent the trial court intended to award rehabilitative maintenance, the award is unsupported by the evidence or the findings and is clearly erroneous.

Second, to the extent the trial court merely mislabeled its award of maintenance and in fact awarded incapacity maintenance, I would hold that the trial court

abused its discretion in doing so.  When a trial court finds that a spouse is physically or mentally incapacitated to the extent that the ability of that spouse to support herself is materially affected, "the trial court should normally award incapacity maintenance in the absence of extenuating circumstances that directly relate to the criteria for awarding incapacity maintenance." *Cannon v. Cannon*, 758 N.E.2d 524, 527 (Ind. 2001).  Nonetheless, such an award is not mandatory.  *Id.*; *see also Lesley v. Lesley*, 6 N.E.3d 963, 968 (Ind. Ct. App. 2014).  Moreover, the duration of an incapacity maintenance award is measured by the duration of the incapacity.  Ind. Code § 31-15-7-2(1); *Spivey v. Topper*, 876 N.E.2d 781, 786 (Ind. Ct. App. 2007).  Limiting an incapacity maintenance award to a finite period in the absence of evidence that the incapacity is finite is error.  *Spivey*, 876 N.E.2d at 786 (comparing spouse's incapacity resulting from bipolar and autoimmune disorders to incapacity resulting from broken bones).

The state of the record before us does not support an award of incapacity maintenance to Wife.  Although there was evidence that Wife receives disability benefits, there was no medical evidence offered to support or explain Wife's claims of disability.  In fact, despite Wife's assertion she was unable to work because she had trouble focusing and staying on task, the trial court specifically found that it saw no evidence of that during the proceedings.  *See* App. at 34.  Further, Husband was disabled and retired at the time of the marriage, and the benefits which comprise his current income were earned entirely before the marriage.  As noted above, the trial court's limited award of maintenance bears no apparent correlation to Wife's disability, nor does it bear

any relation to her prior income or current financial needs. It appears that the award of $1,000 per month for twelve months may have been based primarily on reasons other than Wife's incapacity, as the trial court's findings regarding maintenance were commingled with findings regarding the parties' relative disability and retirement benefits. *See* App. at 32-35 ("Findings Regarding Maintenance/Disability/Retirement Plans"). In light of the facts and circumstances of both parties' situations, I would hold the trial court abused its discretion in ordering Husband to pay incapacity maintenance to Wife.

I therefore respectfully dissent from the majority decision with respect to the issue of maintenance. I concur with the decision in all other respects.